**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| | ) | |
| **IN RE: HCA HEALTHCARE, INC.** | ) | **No. 3:23-cv-00684** |
| **DATA SECURITY LITIGATION** | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .........................................................................................................................3

   I.   HCA's Arguments for Dismissal Fail: Plaintiffs Plead Cognizable Injury, Wrongdoing by HCA, and Their Claims Are Not Barred. ..................................................3

      A.  Plaintiffs Plead Numerous Cognizable Injuries Caused by HCA...............................3

          1.  Plaintiffs Plead Numerous Cognizable Injuries.........................................................4

          2.  Plaintiffs Sufficiently Plead Their Injuries Were Caused by HCA ........................12

      B.  Plaintiffs Plausibly Allege HCA's Own Wrongdoing.................................................14

      C.  The Breach Resulting from a Criminal Attack Does Not Bar Plaintiffs' Claims........15

          1.  Plaintiffs' Tort Claims Are Not Barred ...................................................................15

          2.  Plaintiffs' Contract Claims Are Not Barred.............................................................18

          3.  Plaintiffs' Statutory Claims Are Not Barred............................................................19

   II.  Plaintiffs' Adequately Allege Their Common Law Claims ..............................................20

      A.  The Court Need Not Engage In A Choice-of-Law Analysis at the Rule 12 Stage......21

      B.  Plaintiffs' Common Law Claims Are Well-Pled.........................................................24

          1.  Plaintiffs' Tort Claims Are Well-Pled.....................................................................24

          2.  Plaintiff's Contract Claims Are Well-Pled...............................................................26

   III.  Plaintiffs Adequately Allege Their Statutory Claims.......................................................29

      A.  Each of Plaintiffs' Statutory Claims Is Well-Pled......................................................29

          1.  California Unfair Competition Law (Count X) .........................................................29

          2.  Florida Deceptive Unfair Trade Practices Act (Count XI) .....................................31

          3.  Kansas Consumer Protection Act (Count XII) .........................................................33

i

        4.    Kentucky Consumer Protection Act (Count XIII)...................................................33

        5.    Tennessee Consumer Protection Act (Count XIV)...............................................34

        6.    Virginia Consumer Protection Act (Count XVI) ..................................................35

    B.  The Heightened Rule 9(b) Pleading Standard Is Inapplicable to Plaintiffs' Claims ...36

    C.  Plaintiffs Have Properly Alleged a Claim Under the CMIA .......................................39

IV.    Plaintiffs' Declaratory Judgment Act Claim is Well-Pled..................................................41

CONCLUSION...................................................................................................................................41

4880-7098-1317, v. 1

Case 3:23-cv-00684   Document 133   Filed 06/03/24   Page 3 of 63 PageID #: 1545

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Pro Sound & Recording, LLC v. Albertson,*
  512 F. Supp. 2d 1259 (S.D. Fla. 2007) ...................................................................................32

*Allen v. Wenco Mgmt., LLC,*
  2023 WL 6456571 (N.D. Ohio Sept. 29, 2023)..........................................................................9

*Am. Optical Corp. v. Spiewak,*
  73 So. 3d 120 (Fla. 2011)..........................................................................................................4

*In re Ambry Genetics Breach Litig.,*
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...................................................................................40

*In re Anthem, Inc. Breach Litig.,*
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ...............................................................................30, 34

*In re Anthem, Inc. Breach Litig.,*
  2016 WL 3029783 (N.D. Cal. May 27, 2016).........................................................................31

*In re Arby's Rest. Grp. Inc. Litig.,*
  2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)............................................................................17

*In re. Arthur J. Gallagher Data Breach Litig.,*
  631 F. Supp. 3d 573 (N.D. Ill. 2022) ..................................................................................7, 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................................2

*Asurion, LLC v. SquareTrade, Inc.,*
  407 F. Supp. 3d 744 (M.D. Tenn. 2019)..................................................................................34

*In re Banner Health Breach Litig.,*
  2018 WL 11352137 (D. Ariz. Aug. 7, 2018)......................................................................19, 28

*Biscan v. Brown,*
  160 S.W.3d 462 (Tenn. 2005)...................................................................................................17

*In re Blackbaud, Inc., Customer Breach Litig.,*
  567 F. Supp. 3d 667 (D.S.C. 2021)....................................................................................22, 24

*Bohnak v. Marsh & McLennan Cos., Inc.,*
  79 F.4th 276 (2d Cir. 2023) .....................................................................................................10

4880-7098-1317, v. 1

*Boswell v. RFD-TV the Theater, LLC,*
498 S.W.3d 550 (Tenn. Ct. App. 2016)................................................................21

*Bowen v. Paxton Media Grp., LLC,*
2022 WL 4110319 (W.D. Ky. Sept. 8, 2022)......................................................7, 29

*Bradshaw v. Daniel,*
854 S.W.2d 865 (Tenn. 1993)............................................................................17

*In re Brinker Data Incident Litig.,*
2020 WL 691848 (M.D. Fla. Jan. 27, 2020)..........................................................31

*Burrows v. Purchasing Power, LLC,*
2012 WL 9391827 (S.D. Fla. Oct. 18, 2012)..........................................................31

*Cadence Bank, N.A. v. The Alpha Trust,*
473 S.W.3d 756 (Tenn. Ct. App. 2015).................................................................28

*Camper v. Minor,*
915 S.W. 3d 437 (Tenn. 1996).............................................................................8

*In re Cap. One.,*
488 F. Supp. 3d at 419 .........................................................................25, 38, 39

*Carr v. Okla. Student Loan Auth.,*
2023 WL 6929850 (W.D. Okla. Oct. 19, 2023) .......................................................17

*Chase v. Manhattan Bank, N.A. v. Cve, Inc.,*
206 F. Supp. 2d 900 (M.D. Tenn. 2002)................................................................23

*Cincinnati Ins. Co. v. Grand Pointe, LLC,*
501 F. Supp. 2d 1145 (E.D. Tenn. 2007)................................................................23

*Clancy v. The Bromley Tea Co.,*
308 F.R.D. 564 (N.D. Cal. 2013)..........................................................................22

*Clemens v. ExecuPharm Inc.,*
48 F.4th 146 (3d Cir. 2022) ...................................................................8, 9, 10, 26

*Cole v. Mariner Fin., LLC,*
673 F. Supp. 3d 867 (W.D. Ky. 2023)................................................................19, 20

*Com. Painting Co. v. Weitz Co., LLC,*
676 S.W.3d 527 (Tenn. 2023)............................................................................24

*Corso Enters., Inc. v. Shop at Home Network, Inc.,*
2005 WL 2346986 (M.D. Tenn. Sept. 26, 2005)......................................................24

iv

*Cotten v. Wilson*,
 576 S.W.3d 626 (Tenn. 2019)..................................................................................17

*Courtright v. City of Battle Creek*,
 839 F.3d 513 (6th Cir. 2016) ....................................................................................2

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*,
 395 S.W.3d 653 (Tenn. 2013)...........................................................................28, 29

*Doe 7 v. Univ. of Kansas*,
 2017 WL 4037704 (D. Kan. Sept. 13, 2017) ..........................................................37

*Doe v. Cmty. Health Plan-Kaiser Corp.*,
 1999 WL 624551 (N.Y. Sup. Ct. Apr. 12, 1999)....................................................16

*Envolve Pharmacy Sols., Inc. v. Rite Aid Headquarters Corp.*,
 2023 WL 2547994 (Del. Super. Ct. Mar. 17, 2023) ...............................................27

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) ...........................................................................7, 12

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
 362 F. Supp. 3d 1295 (N.D. Ga. 2019)...................................................5, 17, 32, 37

*F.T.C. v. Wyndham Worldwide Corp.*,
 10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd* 799 F.3d 236 (3d Cir. 2015)..................37

*F.T.C. v. Wyndham Worldwide Corp.*,
 799 F.3d 236 (3d Cir. 2015)....................................................................................31

*Faber v. CIOX Health, LLC*,
 2017 WL 5957206 (W.D. Tenn. Sept. 29, 2017), *aff'd* 944 F.3d 593 (6th Cir.
 2019) .......................................................................................................................25

*Farmer v. Humana, Inc.*,
 582 F. Supp. 3d 1176 (M.D. Fla. 2022)..................................................................31

*Fayne v. Vincent*,
 301 S.W.3d 162 (Tenn. 2009)..................................................................................35

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021)........................................................13

*Fishon v. Mars Petcare US, Inc.*,
 501 F. Supp. 3d 555 (M.D. Tenn. 2020)..................................................................36

*Foisie v. Worcester Polytechnic Inst.*,
 967 F.3d 27 (1st Cir. 2020)......................................................................................22

4880-7098-1317, v. 1

*Foster v. Health Recovery Servs., Inc.*,
   493 F. Supp. 3d 622 (S.D. Ohio 2020) ...................................................................................29

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) .................................................................................................38

*Garza v. Lansing Sch. Dist.*,
   972 F.3d 853 (6th Cir. 2020) ..................................................................................................14

*In re GE/CBPS Breach Litig.*,
   2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021)............................................................................19

*Gordon v. Chipotle Mexican Grill, Inc.*,
   344 F. Supp. 3d 1231 (D. Colo. 2018)....................................................................................38

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ...................................................................................................3

*Griffey v. Magellan Health Inc.*,
   2022 WL 1811165 (D. Ariz. June 2, 2022) ............................................................................32

*Ham v. Swift Transp. Co.*,
   694 F. Supp. 2d 915 (W.D. Tenn. 2010)..................................................................................24

*Harris v. Nordyne, LLC*,
   2014 WL 12516076 (S.D. Fla. Nov. 14, 2014)........................................................................36

*Hataway v. McKinley*,
   830 S.W.2d 53 (Tenn. 1992)....................................................................................................22

*Heflin v. Iberiabank Corp.*,
   571 S.W.3d 727 (Tenn. Ct. App. 2018) ...................................................................................25

*Hummel v. Teijin Auto. Techs., Inc.*,
   2023 WL 6149059 (E.D. Mich. Sept. 20, 2023)...................................................................5, 16

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ....................................................................................30

*Kempf v. Lumber Liquidators, Inc.*,
   2017 WL 4288903 (W.D. Ky. Sept. 27, 2017).........................................................................34

*Kondauer Capital Corp. v. Smith*,
   802 F. App'x 938 (6th Cir. 2020).............................................................................................41

*Leedy v. Hickory Ridge, LLC*,
   663 S.W.3d 537 (Tenn. Ct. App. 2022) .....................................................................................4

4880-7098-1317, v. 1

*Leonard v. McMenamins, Inc.*,
  2022 WL 4017674 (W.D. Wash. Sept. 2, 2022)................................................................10

*Lewis v. Mercedes-Benz USA, LLC*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ...........................................................32, 37

*Lott v. Swift Transp. Co.*,
  694 F. Supp. 2d 923 (W.D. Tenn. 2010)................................................................24

*M.T. v. Saum*,
  7 F. Supp. 3d 701 (W.D. Ky. 2014)......................................................................33

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020)...........................................................7, 17, 18

*Martinez v. Hobbs Mech., Inc.*,
  2021 WL 3439219 (Kan. Ct. App. Aug. 6, 2021) ...............................................33

*McKenzie v. Allconnect, Inc.*,
  369 F. Supp. 3d 810 (E.D. Ky. 2019) ......................................................5, 17, 22

*In re Mednax Services, Inc. Customer Data Sec. Breach Litig.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) ............................................... *passim*

*Milisits v. FCA US LLC*,
  2021 WL 3145704 (E.D. Mich. July 26, 2021) ..................................................36

*Moore v. Centrelake Med. Grp., Inc.*,
  83 Cal.App.5th 515 (Cal. App. 2022), *review denied* (Dec. 14, 2022) ..................30

*In re Motor Fuel Temperature Sales Prac. Litig.*,
  867 F. Supp. 2d 1124 (D. Kan. 2012)..................................................................37

*In re MyFord Touch Consumer Litig.*,
  2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ...................................................36

*N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*,
  2009 WL 10671220 (M.D. Fla. Mar. 31, 2009) ..................................................32

*Nashville Tenn. Ventures, Inc. v. McGill*,
  2021 WL 2070133 (Tenn. Ct. App. May 24, 2021) ............................................25

*Nat'l Bankers Trust Corp. v. Total Quality Logistics, LLC*,
  2013 WL 12100719 (W.D. Tenn. Sept. 30, 2013)...............................................21

*In re Nat'l Prescription Opiate Litig.*,
  589 F. Supp. 3d 790 (N.D. Ohio 2022)...............................................................13

4880-7098-1317, v. 1

*In re: Netgain Tech., LLC*,
2022 WL 1810606 (D. Minn. June 2, 2022)....................................................................22

*Newman v. Total Quality Logistics, LLC*,
2021 WL 1192669 (S.D. Ohio Mar. 30, 2021).................................................................5

*Nieberding v. Barrette Outdoor Living, Inc.*,
2012 WL 6024972 (D. Kan. Dec. 4, 2012)......................................................................33

*Niles v. Mallardi*,
828 So.2d 1076 (Fla. Dist. Ct. App. 2002) ....................................................................21

*Ohio Cas. Ins. Co. v. Travelers Indem. Co.*,
493 S.W.2d 465 (Tenn. 1973).........................................................................................23

*Overstreet v. Shoney's, Inc.*,
4 S.W.3d 694 (Tenn. Ct. App. 1999) ................................................................................4

*Pascarella v. Swift Transp. Co.*,
694 F. Supp. 2d 933 (W.D. Tenn. 2010)..........................................................................24

*Perry v. Bay & Bay Transp. Servs., Inc.*,
650 F. Supp. 3d 743 (D. Minn. 2023)..............................................................................27

*Pietz v. Toledo Trust Co.*,
63 Ohio App. 3d 17 (1989).................................................................................................4

*U.S. ex rel. Pogue v. Am. Healthcorp, Inc.*,
977 F. Supp. 1329 (M.D. Tenn. 1997).............................................................................39

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020)..................................................................................22

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020)..............................................................................10

*Regents of Univ. of Cal. v. Super. Ct.*,
220 Cal.App.4th 549 (2013) ............................................................................................20

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .......................................................................................13

*Rodriguez v. Mena Hosp. Comm'n*,
2023 WL 7198441 (W.D. Ark. Nov. 1, 2023)..................................................................27

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .......................................................................32

4880-7098-1317, v. 1

*Rudolph v. Hudson's Bay Co.*,
  2019 WL 2023713 (S.D.N.Y. May 7, 2019) ................................................................29

*Runnion v. Girl Scouts of Greater Chicago and Nw. Ind.*,
  786 F.3d 510 (7th Cir. 2015) ......................................................................................14

*In re Rutter's Inc. Data Sec. Breach Litig.*,
  511 F. Supp. 3d 514 (M.D. Pa. 2021) .......................................................................27

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017).................................................................19, 27

*Savidge v. Pharm-Save, Inc.*,
  2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) ............................................................9

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .............................................................30

*se. Shipwash v. United Airlines, Inc.*,
  28 F. Supp. 3d 740 (E.D. Tenn. 2014)........................................................................24

*Shadrick v. Coker*,
  963 S.W.2d 726 (Tenn. 1998)...............................................................................16, 26

*SIG, Inc. v. AT&T Digital Life, Inc.*,
  971 F. Supp. 2d 1178 (S.D. Fla. 2013) ......................................................................37

*Smith v. Wm. Wrigley Jr. Co.*,
  663 F. Supp. 2d 1336 (S.D. Fla. 2009) ......................................................................33

*In re Solara Med. Supplies, LLC Customer Breach Litig.*,
  613 F. Supp. 3d 1284 (S.D. Cal. 2020)...................................................................5, 10

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020)......................................................................9, 40

*Steinberg v. Luedtke Trucking, Inc.*,
  2018 WL 3233341 (E.D. Tenn. July 2, 2018) ............................................................24

*Stevens v. Motorists Mut. Ins. Co.*,
  759 S.W.2d 819 (Ky. 1988)........................................................................................33

*Stratton v. Portfolio Recovery Assocs., LLC*,
  770 F.3d 443 (6th Cir. 2014) ........................................................................................3

*Sullivan v. Unidentified Emp.*,
  2021 WL 6882417 (W.D. Ky. July 8, 2021) ..............................................................37

4880-7098-1317, v. 1

*In re SuperValu, Inc. Customer Data Sec. Breach Litig.*,
  2018 WL 1189327 (D. Minn. Mar. 7, 2018) ...............................................................5

*Sutter Health v. Super. Ct.*
  (2014) 227 Cal.App.4th 1546 .....................................................................................20

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014)....................................................................28, 34

*Tate v. EyeMed Vision Care, LLC*,
  2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) .........................................................13

*Tomlinson v. Ocwen Loan Servicing, LLC*,
  2015 WL 7853957 (D. Kan. Dec. 3, 2015)..................................................................36

*Townsend v. Corrs. Corp. of Am.*,
  2008 WL 11510616 (M.D. Tenn. Sept. 22, 2008)........................................................3

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)..............................................................................................8, 10

*Tucker v. Marietta Area Health Care, Inc.*,
  2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ..............................................................26

*Tucker v. Sierra Builders*,
  180 S.W.3d 109 (Tenn. Ct. App. 2005) ......................................................................35

*Wallace v. Health Quest Sys., Inc.*,
  2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ..............................................16, 17, 25

*In re Waste Mgmt. Breach Litig.*,
  2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)...............................................................19

*Webb v. Injured Workers Pharmacy, LLC*,
  2023 WL 5938606 (D. Mass. Sep. 12, 2023) .............................................................15

*Weekes v. Cohen Cleary P.C.*,
  2024 WL 1159642 (D. Mass. Mar. 15, 2024)..............................................................15

*Wirtgen Am., Inc. v. Hayden-Murphy Equip. Co.*,
  2023 WL 5917404 (M.D. Tenn. Sept. 11, 2023).......................................................22

*Wise v. Zwicker & Assocs., P.C.*,
  780 F.3d 710 (6th Cir. 2015) ......................................................................................21

*Wynne v. Audi of Am.*,
  2022 WL 2916341 (N.D. Cal. Jul. 25, 2022)..............................................................10

x

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...............................................................31

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D. Cal. 2018) .........................................................................31

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ......................................................................................12

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................................................36

**Statutes**

Cal. Civ. Code § 56.05(i) ...................................................................................................40

Cal. Civ. Code § 56.101(a) ................................................................................................39

California Consumer Privacy Act ......................................................................................30

California Customer Records Act ......................................................................................30

California Unfair Competition Law ...................................................................................29

California Confidentiality of Medical Information Act ....................................................20, 39, 40

Declaratory Judgment Act ................................................................................................41

Federal Trade Commission Act ................................................................................. *passim*

Florida Deceptive Unfair Trade Practices Act..................................................................31

HIPAA .................................................................................................................14, 15, 17, 25

Kansas Consumer Protection Act .....................................................................................33

Kentucky Consumer Protection Act ..................................................................................33

Ky. Rev. Stat. § 367.170(1) ...............................................................................................33

Medical Information Act....................................................................................................20

Tennessee Consumer Protection Act .............................................................................34, 35

Va. Code. Ann. § 59.1-200(14).........................................................................................35

Virginia Consumer Protection Act..................................................................................35, 36

4880-7098-1317, v. 1

**Rules**

Federal Rule of Civil Procedure 8 ........................................................................................14

Federal Rule of Civil Procedure 9(b)..........................................................................36, 37, 38

Federal Rule of Civil Procedure 12 .....................................................................................21

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................2

Federal Rule of Civil Procedure 23 .....................................................................................36

**Other Authorities**

AMA Code of Medical Ethics, https://code-medical-ethics.ama-assn.org/principles ..................25

Rest. (2d) Conflicts of Law §§ 6, 145, 146.................................................................................22

4880-7098-1317, v. 1

Plaintiffs respond in opposition to Defendant HCA Healthcare, Inc.'s ("HCA") Motion to Dismiss Amended Complaint [ECF 127] ("Motion"), which seeks dismissal of Plaintiffs' Consolidated Class Action Complaint [ECF 125-1] ("Complaint" or "Compl.").

## INTRODUCTION

HCA is a billion-dollar for-profit company that owns and operates hospitals and healthcare centers across the United States. Compl. ¶ 2. At the center of this enterprise is the extensive patient data HCA collects from millions of people seeking medical care for themselves or their children. HCA boasts it "analyzes data from more than 37 million patient encounters each year," uses it to "develop technologies," and partners with companies like Google to develop algorithms and other products. *Id.* ¶ 188 n.11. While collecting and retaining the patient data it ultimately leverages for profit, HCA promises its patients it will keep their PII/PHI confidential. HCA broke this promise.

Sometime before July 5, 2023, a hacker infiltrated an external storage location used by HCA for formatting "marketing email communications with patients" (the "Breach"). Mem. [ECF 128] at 1. The hacker stole the unencrypted PII/PHI of 11 million patients. Compl. ¶ 7. HCA would have the Court believe it is a victim of an attack no company could have prevented. But that a hacker was able to steal unencrypted PII/PHI while undetected by HCA supports that HCA did not have basic, industry-standard security protocols in place for monitoring, detection, and encryption.

HCA concedes that the stolen PII/PHI included *at least* each patient's name, city, state, zip code, email, telephone number, date of birth, gender, service date, location and next appointment date. Compl. ¶ 195. Discovery may well reveal more types of data were taken given the hacker's representations; but even if these are the only categories of data stolen, this PII/PHI, which is in the hands of criminal entities, has already caused injury to Plaintiffs and creates a present and continuing risk of future injury. Claiming that alleging additional types of data stolen is required

1

to allege injury (it is not), HCA inappropriately asks the Court to make a factual determination at the pleading stage that this was the extent of the data stolen. HCA asks this despite the hacker's representation that the sale contained "more data" than the categories listed in the posting (a claim reflected in a document for which HCA *itself* seeks judicial notice) and that they had "emails with health diagnosis that corresponds to a clientID." Compl. ¶ 196. These are but two facts of many well-pled allegations unmentioned by HCA in its Motion that support denial of HCA's motion.

Moreover, HCA is dismissive of how its actions have injured Plaintiffs and the putative Class. The PII/PHI stolen in the Breach is valuable and is the precise information that cybercriminals use to open fraudulent accounts, apply for loans or credit, ruin credit scores, and take advantage of data breach victims in myriad ways. Plaintiffs' injuries have been recognized as cognizable in data breach cases across the country. These harms cannot be rectified by a mere two years of credit monitoring offered by HCA. And, critically, Plaintiffs' PII/PHI remains in HCA's possession, for which Plaintiffs seek necessary injunctive relief to prevent further cyberattacks threatening this PII/PHI. Given the data was already stolen once while the hackers remained undetected, HCA's vague assurances that it has rectified the undisclosed security gaps ring hollow.

In short, Plaintiffs have sufficiently pled their claims and are entitled to pursue them. For these and the reasons that follow, the Court should deny HCA's motion to dismiss in its entirety.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate only where the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). A

2

claim may not be dismissed even if it is "improbable" a plaintiff will be able to prove those facts or if the odds of recovery are "remote and unlikely." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 447 (6th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff need "not plead an abundance of specific facts at this stage" and only need provide the defendant with "'fair notice of what the claim is and the grounds upon which it rests.'" *Townsend v. Corrs. Corp. of Am.*, 2008 WL 11510616, at *1 (M.D. Tenn. Sept. 22, 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (cleaned up).

**ARGUMENT**

**I. HCA's Arguments for Dismissal Fail: Plaintiffs Plead Cognizable Injury, Wrongdoing by HCA, and Their Claims Are Not Barred.**

Contrary to HCA's arguments, Plaintiffs have adequately alleged cognizable injuries proximately caused by the negligence and wrongdoing of HCA—chiefly injuries resulting from HCA's failure to properly secure the PII/PHI of its patients, which HCA had a legal duty to protect.

**A. Plaintiffs Plead Numerous Cognizable Injuries Caused by HCA.**

HCA's argument that Plaintiffs have not alleged a cognizable injury caused by HCA fails. Mem. at 6-13. As a threshold matter, Plaintiffs allege HCA's failure to implement reasonable cybersecurity safeguards allowed cybercriminals to access their PII/PHI, which they posted to the dark web. Compl. ¶¶ 9, 193 ("The unauthorized party posted the entire data dump that it stole from HCA on a dark web hacking forum."), 194, 196. This itself is a cognizable injury. *See*, *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889-90 (11th Cir. 2023). Further, Plaintiffs allege a litany of ascertainable injuries flowing from HCA's failure to properly secure and protect their PII/PHI including the actual and attempted misuse of their PII/PHI after it was stolen in the Breach; present and continuing substantial threat of identity theft and fraud; reasonable mitigation

3

expenses; loss of privacy and confidentiality of the data stolen in the Breach; anxiety, annoyance and nuisance; and deprivation of the benefit of their bargains in dealings with HCA.

Defendant does not provide legal support for its arguments and, in fact, many of Defendant's cited cases merely establish that damages and causal determinations are questions of fact that courts save for later stages of litigation rather than ruling upon at the motion to dismiss stage. For instance, the court in *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) opined on a motion challenging the amount of damages awarded after a jury trial. In *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548-50 (Tenn. Ct. App. 2022), the state appellate court affirmed the lower court's finding of the existence of an injury and the lower court's damages computation. *Id.* The cited, *Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 127 (Fla. 2011), is a Florida state court case where a split court of appeals affirmed a decision on summary judgment.

### 1. Plaintiffs Plead Numerous Cognizable Injuries

The relevant case law provides substantial support for Plaintiffs' cognizable injuries.

**Actual fraud or identity theft.** As even HCA concedes, Mem. at 7, Plaintiffs allege they experienced real and attempted financial, identity, and credit fraud caused by the Breach. *See* Compl. ¶¶ 22, 44, 69, 79, 89, 100, 112, 124, 135, 146, 157, 168. These are tangible, economic harms, causing unauthorized medical bills and fraudulent charges, and fraudulent financial account activity. HCA avers Plaintiffs' harms, including injury of actual fraud and identity theft, should not be recognized because it offered credit monitoring and identity theft insurance. Mem. at 8-9. At best HCA raises questions about the quantum of damages owed which are improper on a motion to dismiss. *Pietz v. Toledo Trust Co.*, 63 Ohio App. 3d 17, 22 (1989) ("It is uncertainty as to the existence of damages, not uncertainty as to the amount, which precludes recovery."). Moreover, identity theft insurance cannot cure all of Plaintiffs' current injuries nor their future risk of injuries.

4

**Out-of-pocket expenses and time dealing with the aftermath of HCA's failures.** HCA contends time spent dealing with the aftermath of the Breach is not a cognizable injury. Mem. at 9. However, time spent dealing with instances of actual fraud and attempting to mitigate future damages are recognized as injuries by the bulwark of cases. *See Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059, at *11-12 (E.D. Mich. Sept. 20, 2023) (noting the "host of alleged damages" including lost time resulting from a data breach); *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, at *4 (S.D. Ohio Mar. 30, 2021) (recognizing mitigation costs to prevent misuse of stolen data is injury); *In re Solara Med. Supplies, LLC Customer Breach Litig.*, 613 F. Supp. 3d 1284, 1296 (S.D. Cal. 2020) (noting that "time spent monitoring one's credit and other tasks associated with responding to a data breach" is an injury); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 818 (E.D. Ky. 2019). Moreover, any reimbursement (which Plaintiffs do not allege, but HCA discusses) is not an issue. *See, e.g.*, *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1317 (N.D. Ga. 2019) ("*Equifax I*") (explaining plaintiffs need not allege whether charges were reimbursed and that "unauthorized charges on [plaintiffs'] payment cards [] are actual, concrete injuries"). HCA cites *In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018), in which that court held a reimbursed charge was not a cognizable injury. However, the Complaint here contains no allegations Plaintiffs' financial harms were reimbursed, and there is no indication that the *In re SuperValu* court considered the harm caused by a delay in such reimbursements or that losing the use of money even temporarily is inherently a financial harm.

Here, at least one named Plaintiff incurred late fees and declined-payment fees as a result of the unauthorized activity. Compl. ¶ 172. In addition, all Plaintiffs allege they have spent time taking mitigatory actions as a result of the Breach. *Id.* ¶¶ 22, 24, 36-37, 48-49, 59-60, 69, 71-72,

5

79, 82, 84, 92-93, 103, 105, 116-17, 124, 127-28, 138-39, 149-50, 160-61, 170-71, 173, 181-82. Plaintiffs took these actions because of the identity fraud-related events they experienced, because their data was posted to the dark web, and because HCA expressly instructed them to in the notification letters (ECF 120-1, at 3). Still, HCA attempts to put Plaintiffs in a catch-22 by arguing their lost time and expense mitigating damages and responding to direct harms is not enough to allege harm while simultaneously arguing a failure to do so is a failure "to exercise reasonable care to mitigate [their] damages." Mem. at 8. The Court should reject this attempt to have it both ways.

**Risk of future fraud or identity theft.** HCA factually disputes that the type of information stolen does not lend itself to identity theft or financial fraud. Mem. at 7. In addition to being incorrect, HCA's own notification letter belies the assertion. First, HCA's vague notice letter asserts the information published to the dark web *included* names, city, state, zip codes, emails, telephone numbers, dates of birth, gender, service date and location, and some dates of next appointment. ECF 120-1, at 2. Importantly, these categories are non-exhaustive—the stolen data merely includes the above-listed categories. Moreover, HCA's letter notes the investigation is ongoing, and that its findings are the result of a preliminary investigation. *Id.* In other words, HCA has yet to determine exactly what data it allowed to fall into the hands of cybercriminals, which is likely the reason HCA counseled Plaintiffs to monitor their financial and credit accounts and offered them credit monitoring services. *Id.* at 3-6. These facts emphasize the need for discovery. Second, Plaintiffs allege the PII/PHI known to be stolen can be used by cybercriminals to impersonate Plaintiffs, to obtain additional data points, and combine the data to steal Plaintiffs' identities. Compl. ¶ 205. Because HCA does not yet know what data was taken, because the data could be used to access more data, and because Plaintiffs have seen ample fraudulent activity

6

following the Breach, it is plausible that Plaintiffs' financial and credit data is now in the hands of cybercriminals.

Finally, that *some* plaintiffs have alleged actual misuse of their PII/PHI is sufficient to substantiate a risk of future harm on *all* of the named plaintiffs. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1263 (11th Cir. 2021) ("*Equifax II*") ("Beyond the sufficient risk of identity theft and resulting injuries, a vast number of Plaintiffs who have not yet suffered identity theft also allege they have spent time, money, and effort mitigating the risk of identity theft. . . . [B]ecause the risk of harm here is a sufficient injury, the allegations of mitigation injuries made by these Plaintiffs are also sufficient."); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460 (D. Md. 2020) (explaining that bellwether plaintiffs who did not allege actual misuse of their PII adequately pled imminent threat of identity theft because "the allegations about the targeting of personal information in the cyberattack and the allegations of identity theft by other Plaintiffs whose personal information was stolen makes the threatened injury sufficiently imminent"); *In re Mednax Services, Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1202 (S.D. Fla. 2022) ("*Mednax*") (recognizing plaintiffs' allegations of actual misuse are "helpful in establishing a 'substantial risk' of future harm for plaintiffs who remain unaffected").

**Emotional distress.** Courts have upheld allegations of anxiety and stress resulting from a data breach like those alleged by Plaintiffs, *see* Compl. ¶¶ 21, 33, 44, 56, 69, 79, 89, 100, 112, 124, 135, 146, 168, 178, as sufficient to show a cognizable injury. *See In re. Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (allegations of anxiety and increased concern for the loss of privacy from a data breach sufficed as legally cognizable injuries); *see also Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *6 (W.D. Ky. Sept. 8, 2022) (averments

7

of mental distress related to plaintiffs' fear of identity theft and of stress, nuisance and annoyance of dealing with issues resulting from a data breach as sufficient to show cognizable injury).[1]

Although HCA does not challenge standing, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 n.7 (2021) is instructive here. There, the Supreme Court acknowledged that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." Since *TransUnion*, multiple courts have held that plaintiffs can allege standing based on emotional distress resulting from a substantial risk of identity theft or fraud. *See*, *e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022); *Mednax*, 603 F. Supp. 3d at 1203 ("[T]he question in this case is . . . whether allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages. The Court concludes that they are."). And, whether HCA's purported offering of inadequate credit monitoring or insurance should have assuaged Plaintiffs' anxiety, Mem. at 10-11, is a question of fact for the jury, or simply irrelevant.

**Spam calls, texts, and emails.** HCA's arguments suggesting that "the annoyance of unwanted telephone calls" cannot be actionable, Mem. at 11, misses the mark as to Plaintiffs' actual allegations. Plaintiffs allege that after the Breach and disclosure of their PII/PHI, they were spammed with harassing calls and texts that cost them time and effort. Compl. ¶¶ 21, 33, 44, 56, 69, 89, 100, 111, 123, 135, 146, 157, 168, 178. As but one example, for Plaintiff Marcisz, this included "automated robocalls and deceptive phishing attempts, such as requests for gift cards purportedly from medical CEOs or CFOs, and attempts to take cash advances of his entire credit limit from his credit card." *Id.* ¶ 100. And as another example, for Plaintiff Tighe, the increased

---

[1] HCA's citation of *Camper v. Minor*, 915 S.W. 3d 437, 446 (Tenn. 1996), is misplaced because it dealt with an NIED claim, which Plaintiffs do not bring.

8

4880-7098-1317, v. 1

spam and phishing attempts have resulted in "daily alerts from his Microsoft Authenticator application notifying him of unauthorized attempts to login to his email account." *Id.* ¶ 146. Just as the time spent on other matters in the wake of the Breach is cognizable injury, the same is true of time spent dealing with increased phishing calls, emails, and texts. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 917-18 (S.D. Cal. 2020) ("It is also reasonable to infer that the receipt of alleged spam/phishing e-mails and/or calls cost Plaintiffs some of their time.").

**Invasion of privacy.** HCA erroneously contends that Plaintiffs' loss of privacy is insufficient to constitute injury because it was a criminal hacker which stole the information. Mem. at 11-12. Privacy harms have been recognized as cognizable injuries even where it was a criminal hacker who stole the information rather than an actual wrongful disclosure by the defendant. *Stasi*, 501 F. Supp. 3d at 910 (collecting cases and explaining that "the harm that results from 'posting' medical information on the Internet has a close relationship to harm that has traditionally been regarded as providing as basis for a lawsuit, especially the public disclosure of private facts"); *see also Clemens*, 48 F.4th at 157; *Savidge v. Pharm-Save, Inc.*, 2024 WL 1366832, at *18-19 (W.D. Ky. Mar. 29, 2024); *Allen v. Wenco Mgmt., LLC*, 2023 WL 6456571, at *3 (N.D. Ohio Sept. 29, 2023). HCA argues that the data stolen was not sensitive, Mem. at 12, but that is also plainly wrong. The information stolen is not public and includes things like date of birth, demographic information, and date and location of next medical appointment, which indicates the medical specialty of services to be received. Compl. ¶¶ 4, 195. This private and confidential information was posted to the dark web—all 27.7 million rows of it—and Plaintiffs allege that they experience emotional distress and anxiety because this data has been exposed and is now in the hands of cybercriminals. *Id.* ¶¶ 21, 33, 44, 56, 69, 79, 89, 100, 112, 124, 135, 146, 168, 178. As has long been recognized, these harms state a cognizable injury.

4880-7098-1317, v. 1

Since the Supreme Court's decision in *TransUnion*, courts have increasingly recognized the disclosure of private information and the resulting loss of privacy as a sufficiently concrete intangible harm. *See*, *e.g.*, *Clemens*, 48 F.4th at 154-55 ("In the data breach context, there are several potential parallels to harms traditionally recognized at common law, depending on the precise theory of injury the plaintiff puts forward. For example, if the theory of injury is an unauthorized exposure of [PII] that results in an increased risk of identity theft or fraud, that harm is closely related to that contemplated by privacy torts that are 'well-ensconced in the fabric of American law'" and sufficiently concrete) (citation omitted); *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 290 (2d Cir. 2023) (explaining that, in and of itself, the exposure of a plaintiff's private PII to unauthorized third parties is concrete); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *4-5 (W.D. Wash. Sept. 2, 2022) ("Nevertheless, Plaintiffs have alleged an injury-in-fact based not on the risk of future identify fraud created by the data breach, but on the actual harm resulting from the theft of Plaintiffs' PII itself."); *Wynne v. Audi of Am.*, 2022 WL 2916341, *5 (N.D. Cal. Jul. 25, 2022) (analyzing *TransUnion* and finding that the invasion of plaintiff's privacy interests in a data breach that compromised her name, driver's license number, Social Security number, and other PII "is a concrete injury").

**Lost value of PII/PHI.** Plaintiffs plead a cognizable injury based on the value of their compromised PII/PHI where they allege the existence of a market for this valuable property right and loss of their ability to participate in that market where hackers disclosed their PII/PHI on the dark web. Compl. ¶¶ 22, 44, 69, 79, 89, 203; *see also Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234-35 (D. Nev. 2020) (holding diminution in value of PII/PHI is a viable damages theory where a market for that information exists and where the plaintiff cannot participate in that market, *i.e.*, hackers disclosed the PII/PHI); *In re Solara Med. Supplies, LLC*

4880-7098-1317, v. 1

*Customer Data Sec. Breach Litig*., 613 F. Supp. 3d 1284, 1308 (S.D. Cal. May 7, 2020) ("Plaintiff[s] . . . [adequately] allege an ascertainable loss in the diminution in value of their [PII/PHI]."). HCA's argument on this issue and reliance largely on older cases fails to recognize the shift in jurisprudence recognizing that a claim for diminution of value of PII/PHI does not require the willingness of a plaintiff to sell such information. "[I]n the data breach context, plaintiffs need not reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder." *Mednax*, 603 F. Supp. 3d at 1204 (collecting cases).

**Benefit of the bargain.** Defendants incorrectly apply *Mednax* to argue Plaintiffs do not allege a cognizable injury. The *Mednax* court dismissed a breach of implied contract claim (under allegations distinguishable from those here[2]), 603 F. Supp. 3d at 1222, but held the plaintiffs *did* plead a cognizable injury under a 'benefit of the bargain' theory where they alleged there was an express or implied contract for data security, that the plaintiffs placed value on that data security, and that the defendants did not satisfy their data security representations. *Id*. at 1205. Here, Plaintiffs' allegations are like those found by the *Mednax* court as sufficient to show a cognizable injury under a 'benefit of the bargain' theory. Compl. ¶¶ 190-93, 295-302.

**Risk of a second data breach for purposes of injunctive relief.** HCA's argument that Plaintiffs "fail to allege any facts suggesting there is an 'imminent or substantial risk'" of future breaches, Mem. at 13, completely ignores the allegations set forth in the Complaint. In fact, Plaintiffs allege that "HCA has offered no assurances … that it has adequately enhanced its

---

[2] For example, Plaintiffs here, unlike plaintiffs in *Mednax*, allege they would not have provided their data without HCA's promise to protect it, and that HCA used their data to profit separately from the provision of healthcare services.

11

security practices to avoid a similar breach in the future." Compl. ¶ 10. Additionally, Plaintiffs allege there remains "actual controversy" as to whether HCA "currently maintain[s] data security measures adequate to protect Plaintiffs and Class Members from further data breaches." *Id*. ¶ 376. Further, the Complaint specifically states that "Plaintiffs allege that HCA's data security measures and third-party vendor vetting remain inadequate." to protect Plaintiffs' PII/PHI which remains on HCA's systems from further security breaches and disclosure. *Id*. By alleging that their PII/PHI remains on HCA's systems and HCA maintains security practices which are inadequate to protect those systems, Plaintiffs have sufficiently alleged the risk of a future data breach.

### 2. Plaintiffs Sufficiently Plead Their Injuries Were Caused by HCA.

HCA's arguments as to causation are once again premised on the misguided theory that Plaintiffs harm cannot stem from the Breach because the data compromised is not the type needed to perpetrate identity theft. Courts have routinely rejected these arguments. In *Mednax*, the court noted, "[e]ven if the data accessed in the Data Breaches did not provide all the information necessary to inflict these harms, they very well could have been enough to aid therein. And '[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement.'" 603 F. Supp. 3d at 1206 (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012)); *see also Equifax II*, 999 F.3d at 1262-63 (finding "numerous unauthorized charges and accounts made in [plaintiffs'] name" sufficient to constitute concrete injury even though only 209,000 credit card numbers were included in a data breach exposing the PII of 146.6 million individuals); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (recognizing that, even in the absence of Social Security numbers, the disclosure of some PII can place data breach victims "at higher risk of 'phishing' and 'pharming,' which are ways for hackers to exploit information they already have to get even more PII").

12

As *Resnick*, 693 F.3d at 1326 (which HCA cites) explains, allegations that plaintiffs had taken care to protect their data lend credence to the plausibility that the misuse of their data stems from the Breach. Plaintiffs allege they have taken particular care to safeguard their PII/PHI by, for example, storing their private documents in a safe place and ensuring that PII/PHI is never transmitted over unencrypted connections. *Id.* ¶¶ 26, 34, 45, 57, 67, 70, 80, 90, 101, 113, 125, 136, 147, 158, 169, 179. Moreover, even if HCA were able to introduce evidence of alternative exposures of Plaintiffs' PII/PHI, which is not appropriate at this stage, such an introduction would not preclude a jury from determining the Breach played a substantial role in causing Plaintiffs' harms. *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 811 (N.D. Ohio 2022).

In any event, there is no causation issue with Plaintiffs' injuries-in-fact of lost time and emotional distress, which are direct results of the Breach and HCA's decision to tell Plaintiffs to mitigate potential damages. These harms on their own are enough to state claims. *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *6 (S.D. Ohio Sept. 29, 2023). But even for Plaintiffs' other injuries, the causal connection remains plausibly alleged. The Sixth Circuit explained in *Galaria v. Nationwide Mut. Ins. Co.* after the plaintiffs alleged that the defendant had failed to implement reasonable security to protect against foreseeable cyberattacks:

> Although hackers are the direct cause of Plaintiffs' injuries, the hackers were able to access Plaintiffs' data only because Nationwide allegedly failed to secure the sensitive [PII/PHI] entrusted to its custody. In other words, but for Nationwide's allegedly lax security, the hackers would not have been able to steal Plaintiffs' data.

663 F. App'x 384, 390 (6th Cir. 2016); *Finesse Express, LLC v. Total Quality Logistics, LLC*, 2021 WL 1192521, at *5 (S.D. Ohio Mar. 30, 2021). Ultimately, these causal determinations will be for the jury.

13

4880-7098-1317, v. 1

### B. Plaintiffs Plausibly Allege HCA's Own Wrongdoing.

HCA contends the Court should dismiss the Complaint for purportedly failing to adequately plead that HCA did anything wrong. Mem. at 13-15. However, in just the first three pages of the Complaint, Plaintiffs detail HCA's unlawful conduct. Indeed, HCA's cybersecurity preparedness was so inadequate that the Breach involved 27.7 million rows of PII/PHI impacting 11 million people. Compl. ¶¶ 1, 6-7, 9, 193. Given the scope of the Breach, it is reasonable to infer that if HCA had implemented the appropriate cybersecurity protections and monitoring capabilities, it would have detected the attack in time to prevent it or at least in time to kick out the intruders before they were able to locate and exfiltrate such a vast expanse of unencrypted data. And at this stage, the Court must make all reasonable inferences in Plaintiffs' favor. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 (6th Cir. 2020). Further, and contrary to HCA's assertions, Plaintiffs have described, at length, the standards, guidelines, and statutory cybersecurity requirements that Plaintiffs allege HCA failed to follow. Compl. ¶¶ 221-42; *see also id.* ¶ 229 (HCA failed to employ reasonable and appropriate measures to protect consumer data); *id.* ¶ 230 (same); *id.* ¶ 236 (HCA failed to comply with the cybersecurity requirements of HIPAA and HITECH); *id.* ¶ 242 (HCA failed to follow industry standards and best practices).

Moreover, HCA's failure to credit Plaintiffs' reasonable inferences inappropriately asks the Court to apply a heightened pleading standard whereby plaintiffs would be required to divine the hidden results of a company's internal forensics investigation. But plaintiffs are not required to plead facts that can only be learned through discovery. *E.g.*, *Runnion v. Girl Scouts of Greater Chicago and Nw. Ind.*, 786 F.3d 510, 529 (7th Cir. 2015) ("We cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information she could not access without

14

4880-7098-1317, v. 1

discovery."). Plaintiff has plausibly alleged that HCA failed to meet its duty to implement reasonable cybersecurity measures and protect the PII/PHI it chose to collect and keep.

HCA attempts to evade liability for the Breach by arguing that Plaintiffs' claims are foreclosed by the criminal cyberattack on its systems arguing that HCA had no duty to protect against criminal activity. Mem. at 15. First, this argument is incorrect in that it ignores Plaintiffs' allegations that the Breach resulted from HCA's inadequate security practices. *E.g.*, Compl. ¶¶ 9, 13, 229-30, 236, 242. Moreover, in data breach actions, courts routinely hold that there is "a duty of reasonable care to protect [Plaintiffs' and Class Members'] PII" and that a defendant "breache[s] this duty by failing to implement proper safeguards to protect against a data breach." *Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *2 (D. Mass. Sep. 12, 2023) (denying motion to dismiss negligence claim); *see also Weekes v. Cohen Cleary P.C.*, 2024 WL 1159642, at *4 (D. Mass. Mar. 15, 2024) (noting courts "have found a duty to protect PII from foreseeable cyberattacks in the data breach context").

**C.      The Breach Resulting from a Criminal Attack Does Not Bar Plaintiffs' Claims.**

**1.      Plaintiffs' Tort Claims Are Not Barred.**

HCA's argument that it owed no duty to its patients, including Plaintiffs, to provide adequate data security to protect their PII/PHI from being stolen, Mem. at 15-18, lacks merit. First, courts have repeatedly found that medical providers and other companies have a common law duty to protect patients' PII/PHI that has been entrusted to them. Second, the FTC Act and HIPAA both supply such a duty. Third, HCA's attempt to conflate the analysis of its well-established duty to protect PII/PHI with an inapplicable duty to protect Plaintiffs from all criminals has no merit as it is inapposite to Plaintiffs' negligence claim.

15

HCA's argument that it owed no fiduciary duty to Plaintiffs disregards the reality that they obtained Plaintiffs' PII/PHI in the course of providing healthcare treatment. *See* Compl. ¶¶ 19, 31, 42, 54, 65, 77, 87, 98, 109, 133, 144, 155, 166. Accordingly, HCA had a fiduciary duty to keep Plaintiffs' PII/PHI confidential based on the implied covenant of trust and confidence that is inherent in the physician-patient relationship. *Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998) (holding doctor and patient "had a confidential or fiduciary relationship by virtue of having a doctor-patient relationship."). This duty extends beyond physicians to healthcare corporations performing ancillary functions for physicians, "because the cloak of confidentiality wraps around more than the health care professional who renders services." *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *12 (S.D.N.Y. Mar. 23, 2021) (citation omitted); *Doe v. Cmty. Health Plan-Kaiser Corp.*, 1999 WL 624551, at *3 (N.Y. Sup. Ct. Apr. 12, 1999) (physician's fiduciary duty to keep patient PHI confidential extends "by implication any handler of that information").

Further, Plaintiffs allege specific HCA omissions that caused the Breach. *See* Compl. ¶¶ 9-12, 221-42, 256 (alleging HCA failed to encrypt confidential data, failed to monitor its systems to detect and prevent unauthorized access, failed to delete information it was no longer required to maintain, failed to audit its systems for vulnerabilities and to correct any vulnerabilities, and failed to timely and accurately notify victims of the Breach). These allegations suffice at the pleading stage to support that HCA breached its duty. *Hummel*, 2023 WL 6149059, at *7 ("Plaintiff's contention that Defendant did not encrypt Plaintiff's PII is a specific factual allegation, which if true, could constitute breach of duty by Defendant.") (citing *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1188 (D. Nev. 2022) (allegations defendant departed from industry standard practices, failed to encrypt PII, and failed to delete PII sufficed to demonstrate negligence)); *see*

4880-7098-1317, v. 1

*also Carr v. Okla. Student Loan Auth.*, 2023 WL 6929850, at *2-3 (W.D. Okla. Oct. 19, 2023); *In re Arthur J. Gallagher*, 631 F. Supp. 3d at 586; *Wallace*, 2021 WL 1109727, at *9.

In addition, courts routinely hold the FTC Act and HIPAA establish enforceable duties to protect PII/PHI to inform the scope of duty under state law. These duties are applicable to data breaches "based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Marriott*, 440 F. Supp. 3d at 481; *see Equifax I*, 362 F. Supp. 3d at 1327; *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *8 (N.D. Ga. Mar. 5, 2018). Therefore, Plaintiffs allege duties based on the FTC Act and HIPAA. Compl. ¶¶ 221-36.

To the extent HCA attempts to escape liability by pointing to the actions of a criminal party, this is unavailing as HCA has a duty in Tennessee to protect against foreseeable conduct of a third party, even a criminal one. Under Tennessee law, "all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). Moreover, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Biscan v. Brown*, 160 S.W.3d 462, 482-83 (Tenn. 2005). If foreseeable, the intervening act of a third party does not bar liability. *Cotten v. Wilson*, 576 S.W.3d 626, 644 (Tenn. 2019); *see also McKenzie*, 369 F. Supp. 3d at 818 ("[W]hile Allconnect may not have had a duty to protect its employees from unknown or unforeseen third parties, [it] did have a duty to prevent foreseeable harm to its employees and, as part of that duty, had a duty to safeguard the [PII/PHI] of its employees from unauthorized release or theft."). Here, Plaintiffs plead the Breach was foreseeable. *E.g.*, Compl. ¶¶ 285-88, 291, 309. Thus, HCA cannot escape liability by pointing to the foreseeable actions of a third party.

4880-7098-1317, v. 1

### 2. Plaintiffs' Contract Claims Are Not Barred.

HCA next presents an odd argument to dismiss Plaintiffs' contract claims. Essentially, HCA argues that Plaintiffs must plead the existence of an express contract provision that obliges HCA not just to safeguard the confidentiality of their PII/PHI but to specifically safeguard against the acts of third parties. *See* Mem. at 19. HCA also implies Plaintiffs' contractual claims are defeated because HCA's requirement to notify individuals of a data breach absolves it of liability for failing to *prevent* a data breach. *See id*. Both arguments are nonsensical and should be rejected.

Plaintiffs allege HCA is required to take affirmative steps to ensure its system is protected from third-party intrusions by, *e.g.*, "us[ing] an intrusion detection system to expose a breach as soon as it happens, monitor[ing] all incoming traffic for activity indicating someone is trying to hack the system, watch[ing] for large amounts of data being siphoned from the system, and hav[ing] a response plan in the event of a breach." Compl. ¶ 226. But even without that, from what is HCA supposed to protect its network if not the acts of a third party? HCA does not cite a single case where a court held plaintiffs must allege a contractual provision stating the defendant must protect against, specifically, a third-party breach and not just the negligent release of PII/PHI. *See* Mem. 19-20.

Regardless, Plaintiffs allege "Plaintiffs and Class Members would not have provided their [PII/PHI] to [HCA] had they known that [HCA] would make [it] internet-accessible, not encrypt personal and sensitive data elements and not delete the [PII/PHI] it no longer had reason to maintain." Compl. ¶ 12; *see In re Marriott*, 440 F. Supp. 3d at 466 ("[I]t is enough to allege that there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that Defendants failed to meet their representations about data security."). These expected security precautions are plainly designed to protect against third-party intrusions.

4880-7098-1317, v. 1

Moreover, "courts may presume that a party who provides sensitive information while receiving a job, a good, or a service may expect that the information is reasonably protected." *In re Banner Health Breach Litig.*, 2018 WL 11352137, at *3 (D. Ariz. Aug. 7, 2018) (citing *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)); *see also In re Waste Mgmt. Breach Litig.*, 2022 WL 561734, at *4 (S.D.N.Y. Feb. 24, 2022) ("Large data breaches regularly occur, and their frequency is only increasing. When an employer requires an employee to submit their [PII], the employee therefore has a reasonable expectation that the employer will take reasonable care not to place their personal data at unnecessary risk of exposure."). This is because an implicit promise to safeguard PII/PHI is inherent to a transaction requiring its exchange. *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750-51 (S.D.N.Y. 2017) (allegations that defendant "required and obtained the PII" from plaintiffs "evince[d] an implicit promise by [defendant] to act reasonably to keep [plaintiffs'] PII safe[]" and established an implied contract). Indeed, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of [PII/PHI] would not imply the recipient's assent to protect the information sufficiently." *Id.* at 751 (quoting *Castillo*, 2016 WL 9280242, at *9); *see In re GE/CBPS Breach Litig.*, 2021 WL 3406374, at *12 (S.D.N.Y. Aug. 4, 2021).

Accordingly, HCA's attempt to dismiss Plaintiffs' contract claims must be rejected.

### 3. Plaintiffs' Statutory Claims Are Not Barred.

HCA next wrongly argues that Plaintiffs' statutory claims are also "barred" because the Breach "resulted from a criminal attack." Mem. at 20. In support, HCA cites a single case, *Cole v. Mariner Fin., LLC*, 673 F. Supp. 3d 867, 872 (W.D. Ky. 2023), for its argument that Plaintiffs cannot allege violations of the Kentucky CPA seemingly because the exposure of Plaintiffs' PII/PHI resulted from criminal acts of a third party. Mem. at 20. But *Cole* presented entirely

19

different facts. Indeed, as proffered by HCA, the court in *Cole* dismissed plaintiff's claim under the Kentucky CPA—but it was not, as HCA suggests, Mem. at 21, simply because of the involvement of a third party who stole a live check that was mailed, unsolicited, by defendant to the plaintiff. The Court dismissed plaintiff's Kentucky CPA claim in *Cole* because plaintiff could not establish privity of contract as there was no purchase of goods or services from defendant. *Id.* at 871. HCA cannot and does not dispute that there is privity between Plaintiffs and HCA. *See* Compl. ¶¶ 2, 190; Mem. at 3 (acknowledging Plaintiffs allege HCA is a healthcare company that not only provides care to patients, but also maintains medical records).

Similarly, HCA's argument that Plaintiffs are barred from bringing a claim under the California Confidentiality of Medical Information Act ("CMIA") fails. Civil Code § 56.10 provides that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Although "disclosure" is not defined by statute, courts have inferred it to mean, within the "context of CMIA and the protections afforded confidential medical information[,] an affirmative act of communication." *Regents of Univ. of Cal. v. Super. Ct.*, 220 Cal.App.4th 549, 564 (2013); *see also Sutter Health v. Super. Ct.* (2014) 227 Cal.App.4th 1546, 1555-56 ("[T]he context and ordinary meaning suggest that disclosure occurs when the health care provider affirmatively shares medical information with another person or entity."). While discovery will reveal the exact mechanism by which the Breach occurred, Plaintiffs adequately allege HCA's sharing of PHI with unauthorized parties. Compl. ¶¶ 389-90, 395. Given that HCA's actions allowed for the exposure and exfiltration of Plaintiffs' PHI, HCA (through its storage location that maintained the medical information) affirmatively shared (*i.e.*, communicated) the PHI with unauthorized third parties. HCA's reliance on stolen computer or hard drive cases, such as *Regents*, is unavailing; those circumstances and

20

the defendants' own actions were vastly different than one where data was specifically targeted and HCA's external storage location communicated the PHI to the unauthorized parties.

## II. Plaintiffs' Adequately Allege Their Common Law Claims.

### A. The Court Need Not Engage In A Choice-of-Law Analysis at the Rule 12 Stage.

HCA asserts Plaintiffs' common law claims should be dismissed because Plaintiffs fail to state the applicable law. Mem. at 21-23. Not only does HCA rely on nonbinding authority for its assertion, but a choice-of-law analysis is not required here, where no material conflict has been identified. But, even if it were ultimately needed due to conflicts, a choice-of-law assessment is premature at this stage given discovery is required for the fact-intensive analysis.

As a threshold matter, a choice-of-law analysis is only required if "a conflict actually exists between the relevant laws of the different jurisdictions." *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 555 (Tenn. Ct. App. 2016). The identified conflict must be a "material distinction . . . pertain[ing] to the issues raised in the instant motions." *Nat'l Bankers Trust Corp. v. Total Quality Logistics, LLC*, 2013 WL 12100719, at *5 n.8 (W.D. Tenn. Sept. 30, 2013). HCA fails to identify any actual material conflict of laws. HCA's assertion that Florida breach of fiduciary duty law requires intentional conduct, Mem. at 22, is patently false. *See Niles v. Mallardi*, 828 So.2d 1076, 1078 n.1 (Fla. Dist. Ct. App. 2002) (breach of fiduciary duty includes "merely negligent" conduct). And, although HCA cites a case discussing variances in unjust enrichment laws, Mem. at 22, it identifies no material conflict applicable to Plaintiffs' unjust enrichment claim. Nor does HCA do so for any of Plaintiffs' other common law claims. *See id*.

However, even if material conflicts were identified, Tennessee's choice-of-law inquiries are fact-intensive and require discovery to be completed. This is why courts, including those in the Sixth Circuit, defer the choice-of-law analysis at the pleading stage. *See Wise v. Zwicker & Assocs.,*

21

*P.C.*, 780 F.3d 710, 718 (6th Cir. 2015) (reversing dismissal of a claim where "[t]he pleadings do not provide sufficient facts to make a determination on these two [choice-of-law] issues[.]"); *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42-43 (1st Cir. 2020) (reversing dismissal of common law claims because "the court below should not have made a choice-of-law determination at the motion-to-dismiss stage" as it would be "better positioned" to make that determination after discovery); *Wirtgen Am., Inc. v. Hayden-Murphy Equip. Co.*, 2023 WL 5917404, at *10 (M.D. Tenn. Sept. 11, 2023) (declining to conduct a choice-of-law analysis at the pleading stage and permitting plaintiff to plead claims in the alternative); *see also In re: Netgain Tech., LLC*, 2022 WL 1810606, at *7 (D. Minn. June 2, 2022) ("[C]ourts generally decline to conduct a choice-of-law analysis prior to discovery."); *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) ("[I]t can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place."); *McKenzie*, 369 F. Supp. 3d at 817 ("[T]he Court does not have sufficient information at this juncture to engage in a comprehensive choice of law analysis."); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."). The Court should do the same here.

For torts, Tennessee's fact-intensive "most significant relationship" test requires an analysis of, *inter alia*, where the injury occurred, where the injury-causing conduct occurred, and the policies of interested states. *Hataway v. McKinley*, 830 S.W.2d 53, 59-60 (Tenn. 1992) (adopting Rest. (2d) Conflicts of Law §§ 6, 145, 146). HCA's presumption that the injury occurred where each Plaintiff lives, Mem. at 21-22, is wrong. In a data breach case, the place of injury is typically the location from which the data was stolen. *In re Blackbaud, Inc., Customer Breach*

4880-7098-1317, v. 1

*Litig.*, 567 F. Supp. 3d 667, 674-77 (D.S.C. 2021) ("The actual identity theft, emotional distress, and time and/or money spent to mitigate the harm all manifest from the initial injury—the exposure of Plaintiffs' [PII/PHI]."). Or, when the location of the breach is "unknown or even unknowable," courts consider the state where the data was maintained and where the defendant's "security protocols broke down." *Mednax*, 306 F. Supp. 3d at 1159. Discovery is thus vital to understanding where the data was maintained and exposed and where HCA makes data security decisions.

For contracts, Tennessee law applies the fact-based "law of the place where the contract is made." *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973). "[A] a contract implied in fact arises when circumstances establish the parties' mutual intent to contract." *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1167 (E.D. Tenn. 2007). HCA incorrectly assumes the state where Plaintiffs received healthcare services controls. Mem. at 23. But, determining where mutual intent manifested requires discovery. For example, where HCA made its offer and where it accepted receipt of Plaintiffs' PII/PHI, both facts relevant to mutual intent, have not yet been discovered. And, although not addressed by HCA, for Plaintiffs' unjust enrichment claim, discovery will reveal "the place where the benefit or enrichment was received," and "the place where [the data] . . . was situated at the time of the enrichment." *Chase v. Manhattan Bank, N.A. v. Cve, Inc.*, 206 F. Supp. 2d 900, 906 (M.D. Tenn. 2002).

Finally, HCA is incorrect in its assertion that no one law, such as Tennessee's, may govern the common law claims and Plaintiffs emphatically do not "concede" that proposition by pleading state-specific subclasses in the alternative to a nationwide class. Mem. at 22. One state's laws may very well apply to Plaintiffs' common law claims, depending on what discovery shows. But at this juncture, the Court, like Plaintiffs, is not required to guess what law may apply. Thus, Plaintiffs' opposition responds to HCA's common-law arguments on Tennessee law, but also addresses,

4880-7098-1317, v. 1

where pled in the alternative, other potentially applicable laws. *See, e.g.*, *In re Blackbaud*, 567 F. Supp. 3d at 676 (applying law of forum on motion to dismiss as choice-of-law analysis premature).

### B. Plaintiffs' Common Law Claims Are Well-Pled.

#### 1. Plaintiffs' Tort Claims Are Well-Pled.

**Negligence (Count I).** HCA asserts that Plaintiffs' negligence claim is barred by the economic loss doctrine. Mem. at 23-24. This argument contradicts Tennessee law. "We hold that the economic loss doctrine ***only*** applies in products liability cases and should not be extended to other claims." *Com. Painting Co. v. Weitz Co., LLC*, 676 S.W.3d 527, 542 (Tenn. 2023) (emphasis added). Additionally, numerous federal courts have found that the economic loss doctrine does not extend to service contracts. *Ham v. Swift Transp. Co.,* 694 F. Supp. 2d 915, 922-23 (W.D. Tenn. 2010); *see, e.g.*, *Broadnax v. Swift Transp*. Co., 694 F. Supp. 2d 947, 953-54 (W.D. Tenn. 2010); *Pascarella v. Swift Transp. Co*., 694 F. Supp. 2d 933, 945-46 (W.D. Tenn. 2010); *Lott v. Swift Transp. Co*., 694 F. Supp. 2d 923, 930-31 (W.D. Tenn. 2010); *Corso Enters., Inc. v. Shop at Home Network, Inc*., 2005 WL 2346986, at \*7 (M.D. Tenn. Sept. 26, 2005). HCA's argument fails.

**Negligence *per se* (Count II).** A claim for negligence *per se* under Tennessee law requires: (1) a violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause. *Steinberg v. Luedtke Trucking, Inc.,* 2018 WL 3233341, at \*3 (E.D. Tenn. July 2, 2018). HCA only disputes that Plaintiffs have alleged statutes that establish an applicable standard of care. Mem. at 25-26. HCA does not dispute, and therefore waives argument at the motion to dismiss stage, that these statutes were meant to benefit and protect Plaintiffs, and Plaintiffs' injuries were proximately caused by HCA's data breach. The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute is negligence *per se*. *Shipwash v. United*

24

*Airlines, Inc.*, 28 F. Supp. 3d 740, 751 (E.D. Tenn. 2014); *see also Faber v. CIOX Health, LLC*, 2017 WL 5957206, at *5-6 (W.D. Tenn. Sept. 29, 2017), *aff'd* 944 F.3d 593 (6th Cir. 2019) (citing *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 34-35 (Tenn. 1988)) (Under Tennessee law, "a violation of federal and state regulations can be the basis for a negligence claim."). Each of the statutes at issue here—the FTC Act, HIPAA, and the Tennessee CPA—sufficiently establishes the standards of care required for Plaintiffs' negligence *per se* claim.

**Breach of confidence (Count V).** Contrary to HCA's assertion, Mem. at 26, "Tennessee has long recognized a cause of action for breach of confidential relationship." *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 736 (Tenn. Ct. App. 2018). A confidential relationship is found where one party depends on the other "to exercise dominion and control." *Id.* Courts across the country have applied this standard in the data breach context. For example, the court in *Wallace* found a breach of confidence claim stated based on allegations the defendant "failed to implement certain safeguards and computer security practices that would have prevented disclosure of their PII/PHI." 2021 WL 1109727, at *9. Similarly, in *In re Cap. One Consumer Data Sec. Breach Litig.*, the court found that breach of confidence claims were sufficiently alleged. 488 F. Supp. 3d 374, 409 (E.D. Va. 2020). Here, Plaintiffs have alleged they entrusted their PII/PHI to HCA, such that HCA was in an exclusive position to protect it. *E.g.*, Compl. ¶¶ 19, 31, 42, 54, 65, 87, 98, 109, 133, 144. This is enough to state a claim for breach of confidence.

**Breach of fiduciary duty (Count VII).** To adequately plead a claim for breach of fiduciary duty, a plaintiff must establish: "(1) a fiduciary relationship; (2) a breach of the resulting fiduciary duty; and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Nashville Tenn. Ventures, Inc. v. McGill*, 2021 WL 2070133, at *5 (Tenn. Ct. App. May 24, 2021). Plaintiffs have adequately pled facts sufficient to establish breach and injury, as discussed above, but they

25

have also alleged facts establishing the fiduciary relationship. Under Tennessee law, the doctor-patient relationship is fiduciary in nature. *See Shadrick*, 963 S.W.2d at 736; *see also Tucker v. Marietta Area Health Care, Inc.,* 2023 WL 423504, at *6 (S.D. Ohio Jan. 26, 2023) (denying motion to dismiss breach of fiduciary duty claim in data breach case, reasoning that nature of physician-patient relationship is of fiduciary character customarily understood to carry obligation of secrecy and confidence). HCA's attempted distinction between this relationship and one with "a large healthcare organization" is tenuous at best. Compl. ¶ 2. In fact, that there should be more than an arms-length relationship between the group of doctors and their patients should be a rather uncontroversial statement—surely HCA does not deny that doctor-patient confidentiality is an important feature of the relationship between it and Plaintiffs and a foundational part of the medical profession. *See, e.g.*, AMA Code of Medical Ethics, https://code-medical-ethics.ama-assn.org/principles ("A physician shall . . . safeguard patient confidences and privacy within the constraints of the law."). Because Plaintiffs adequately plead the existence of a fiduciary duty owed by HCA, as a healthcare provider, to its patients, including Plaintiffs and Class Members, HCA's motion to dismiss should be denied on this count.

### 2. Plaintiff's Contract Claims Are Well-Pled.

**Breach of implied contract (Count III).** Each of HCA's challenges to Plaintiffs' implied contract claim, Mem. at 27-29, has been rejected by courts in data breach cases. First, Plaintiffs not only plead they expected their PII/PHI to remain confidential, but also allege HCA's privacy policy shows HCA understood its obligation to protect the PII/PHI from unauthorized access. Compl. ¶¶ 189-90. Courts regularly find this sufficient to show a defendant's intent to keep PII/PHI confidential. *Clemens*, 48 F.4th at 156 ("When Clemens provided ExecuPharm with her [PII] upon hire, ExecuPharm expressly contracted to "take appropriate measures to protect the confidentiality

26

4880-7098-1317, v. 1

and security" of this information . . . Clemens alleged that ExecuPharm breached this express provision when it failed to adequately protect her [PII.]"); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 535 (M.D. Pa. 2021) ("Plaintiffs have referenced company-specific documents and policies to support a promise implied by the parties' conduct"); *Sackin*, 278 F. Supp. 3d at 750 ("TransPerfect's privacy policies and security practices manual—which states that the company 'maintains robust procedures designed to carefully protect the PII with which it [is] entrusted'—further supports a finding of an implicit promise").

Second, Plaintiffs' allegation that they entrusted their PII/PHI to HCA is sufficient for consideration. *Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *7 (W.D. Ark. Nov. 1, 2023) ("Plaintiffs have alleged that they exchanged their PII for medical services, and the Court joins others in recognizing that such a transaction includes a promise to protect the Plaintiffs' PII.") (citing *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1187 (M.D. Fla. 2022) ("The majority of federal courts have held that the existence of an implied contract to safeguard customers' data could reasonably be found to exist between a merchant and customer when a customer uses a payment card to purchase goods and services.")); *see also Perry v. Bay & Bay Transp. Servs., Inc.*, 650 F. Supp. 3d 743, 757 (D. Minn. 2023) (recognizing implied contract claim where "Bay & Bay provided consideration by promising to consider Perry for employment, while Perry provided consideration by providing valuable property, his PI") Indeed, even outside the data breach context, courts find [PII] sufficient to satisfy contract requirements, even where, as here, the corresponding contract was one of adhesion. *See Envolve Pharmacy Sols., Inc. v. Rite Aid Headquarters Corp.*, 2023 WL 2547994, at *14 (Del. Super. Ct. Mar. 17, 2023) ("With regard to the Program, the Court views this [PII] as sufficient consideration to create a valid contract. Those customers enrolled in the Program were indeed 'contracted.'").

27

4880-7098-1317, v. 1

Finally, HCA argues the terms of the implied contract were not definite enough for contract formation. Mem. at 28-29. Not so. Plaintiffs allege HCA was to employ appropriate industry standard data security practices, including encrypting or deleting information from its Internet-accessible network. Compl. ¶¶ 12, 225-29, 237-41. And, as demonstrated above, HCA was aware it was obliged to implement reasonable data security. This sufficiently alleges the contours of an implied contract to safeguard PII/PHI. *In re Banner Health*, 2018 WL 11352137, at \*3 ("Plaintiffs sufficiently allege facts to show that there was an implied-in-fact contract term whereby Defendant would take reasonable security measures to protect Employee Plaintiffs' data."); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176 (D. Minn. 2014) (similar).

**Breach of implied covenant of good faith and fair dealing (Count IV).** Plaintiffs concede that under Tennessee law, breach of the implied covenant of good faith and fair dealing is not a standalone cause of action. But even if the Court applies Tennessee law here, Plaintiffs' allegations in this count are well-pled as subsumed into their implied contract claim. *See, e.g.*, *Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015) (analyzing as part of implied contract). And, while HCA insists Plaintiffs must allege a breach of something beyond the implied contract provision, they have. Plaintiffs have alleged HCA was vested with discretion in performing the implied contract and failed to implement its basic requirements. Compl. ¶¶ 316-17. It is where a contract is silent as to precise requirements that Tennessee law enforces the implied covenant. *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) (finding an implied condition of reasonableness). HCA also misapprehends the standard by which the implied covenant is breached when it insists Plaintiffs must allege malicious acts. Mem. at 30. To the contrary, interpreting a contract in an unreasonable way, *e.g.*, claiming there was never any obligation to secure data, violates the covenant of good faith and fair dealing.

28

*Dick Broad. Co.*, 395 S.W.3d at 662 (citing *Town & Country Equip., Inc. v. Deere & Co.*, 133 F. Supp. 2d 665, 670 (W.D. Tenn. 2000)). Finally, even if a heightened standard somehow applied, Plaintiffs have alleged HCA concealed, omitted, and suppressed the truth regarding its data security and recklessly performed its end of the bargain with Plaintiffs. Compl. ¶¶ 188-91, 339.

**Unjust enrichment (Count VI).** Plaintiffs' unjust enrichment claim is also well-pled. Unjust enrichment lies when a defendant "accepted the benefits accompanying plaintiff's data, but [did] so at the plaintiff's expense by not implementing adequate safeguards, thus making it 'inequitable and unconscionable' to permit defendant to retain funds that it saved by 'shirking data-security' and leaving the plaintiff 'to suffer the consequences.'" *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at \*12 (S.D.N.Y. May 7, 2019) (holding plaintiff in data breach case alleged unjust enrichment claim); *see also Bowen*, 2022 WL 4110319, at \*8 (same); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 642-43 (S.D. Ohio 2020) (same). This theory of unjust enrichment matches Plaintiffs' allegations. *See* Compl. ¶¶ 357-67. Further, to the extent HCA argues Plaintiffs' PII/PHI is not a benefit, Mem. at 30-31, "automated marketing materials and appointment reminders via email" as HCA states is the use of the PII/PHI at issue, *id.* at 31, has a profit purpose. Accordingly, Plaintiffs' unjust enrichment claim is properly pled.

## III. Plaintiffs Adequately Allege Their Statutory Claims.

### A. Each of Plaintiffs' Statutory Claims Is Well-Pled.

#### 1. California Unfair Competition Law (Count X).

HCA raises several unpersuasive arguments against Plaintiffs' UCL claim. Mem. at 32-33. First, HCA contends "Plaintiff Marcisz has pled no facts suggesting how HCA allegedly (i) engaged in any practice that 'outweigh[s] any countervailing benefits to consumers or competition' under the statute's unfair prong, (ii) violated 'any law or regulation' under the unlawful prong

claim, or (iii) identified a practice that is 'likely to deceive' under the fraudulent prong." Mem. at 33. Each of these contentions fails. First, as recognized in *In re Anthem, Inc. Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016), various statutes—including statutes on which Plaintiffs rely here such as the California Consumer Privacy Act, California Customer Records Act, and Section 5 of the FTC Act (*see* Compl. ¶¶ 403c, 404, 406g)—"reflect 'California's public policy of protecting customer data.'" "Whether [HCA's] public policy violation is outweighed by the utility of [its] conduct under the balancing test is a question to be resolved at a later stage in this litigation." *In re Anthem*, 162 F. Supp. 3d at 990. Second, Plaintiffs allege multiple statutes HCA violated. Compl. ¶¶ 403c, 404, 406g. Finally, while Plaintiffs allege HCA violated the "unfair" and "unlawful" prongs of the UCL (*see id.* ¶¶ 403, 404), they do not allege a violation of the "fraudulent" prong. For these reasons, Plaintiffs have sufficiently alleged a UCL claim.

Moreover, contrary to HCA's argument, Mem. at 33, Plaintiff Marcisz has alleged "economic loss." California courts have recognized credit monitoring costs as proper economic damages under the UCL. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal.App.5th 515, 530 (Cal. App. 2022), *review denied* (Dec. 14, 2022); *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 659-61 (N.D. Cal. 2020) ("[P]ayments toward enhanced credit monitoring that arise from a data breach and that are not reimbursed . . . 'constitute economic injury, sufficient to confer UCL standing.'"). "To the extent that [HCA] factually disputes whether [Plaintiff Marcisz's] credit monitoring costs were 'required' or 'necessary,' that cannot be resolved at this [motion to dismiss] stage." *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *8 (N.D. Cal. Aug. 9, 2021); *Moore*, 83 Cal. App. 5th at 531 (same). In addition, Plaintiff Marcisz alleges he provided PII/PHI he otherwise would not have provided had he known about HCA's inadequate data security practices and that he suffered the diminution in value of his PII as a result. These injuries are also sufficient to allege a

30

violation of the UCL. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018) (allegations regarding lost benefit of the bargain sufficient to satisfy economic injury requirement for UCL); *In re Anthem, Inc. Breach Litig.*, 2016 WL 3029783, at *14-15, 32 (N.D. Cal. May 27, 2016) (lost value of PII is sufficient for statutory standing).

Even if Plaintiff Marcisz had not alleged economic loss, he alleges a proper basis for injunctive relief under the UCL based on HCA's continued possession of his PII/PHI with no assurance HCA had adequately redressed the failures that led to the Breach. *See* Compl. ¶ 10; *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017) (plaintiffs had standing under the UCL to pursue injunctive relief where alleged defendant failed to appropriately detect and respond to a data breach, continued to dispute its responsibility for securing data, and provided no assurances that plaintiffs' PII was or would remain secure).

### 2. Florida Deceptive Unfair Trade Practices Act (Count XI).

HCA wrongly contends Plaintiffs "plead no facts suggesting any 'unfair practice' that 'offends established public policy' and is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" under FDUTPA. Mem. at 33. But Florida courts have held that a defendant's business practice of maintaining inadequate data security *itself* violates FDUTPA, even in the absence of misrepresentations or omissions made to its customers or patients. *Farmer*, 582 F. Supp. 3d at 1190; *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *12 (M.D. Fla. Jan. 27, 2020); *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012).[3]

---

[3] Additionally, whether an act is an unfair practice under FDUTPA is afforded "due consideration and great weight . . . to the interpretations of the [FTC] and the federal courts relating to" Section 5 of the FTC Act. Fla. Stat. § 501.204. And the failure to maintain reasonable and appropriate data security for PII/PHI violates Section 5 of the FTC Act. *See, e.g.*, *F.T.C. v. Wyndham Worldwide*

4880-7098-1317, v. 1

Equally unavailing is HCA's argument that Plaintiffs have not pled "actual damages" under FDUTPA, which HCA says are limited to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." Mem. at 33 (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)). The text of FDUTPA does not define "actual damages," and Florida courts have recently rejected the "narrow" definition of actual damages provided in earlier cases like *Rollins.* As recognized in *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, there is "a much larger universe of damages available in FDUTPA claims arising outside the consumer transaction context . . . especially when considered alongside the liberal construction courts must afford the FDUTPA to accomplish its remedial purpose." 2021 WL 4077966, at *7 (S.D. Fla. Sept. 8, 2021). In *Tymar*, the court held actual or compensatory damages are those which "arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and bodily pain and suffering." *Id.* at 1285; *see also Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *8 (D. Ariz. June 2, 2022) (finding FDUTPA damages sufficiently alleged where plaintiff "allege[d] that he overpaid for health services that [defendant] in some way administers because [defendant]'s data security was inadequate"). In addition, it is inappropriate at the motion to dismiss stage for a court to make factual determinations or rule on the adequacy of Plaintiffs' damages evidence. *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 2009 WL 10671220, at *3 (M.D. Fla. Mar. 31, 2009); *Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1269 (S.D. Fla. 2007).

Finally, even if Plaintiffs were not entitled to actual damages, they are entitled to injunctive relief under FDUTPA based on HCA's continued possession of their PII/PHI, and HCA's

---

*Corp.*, 799 F.3d 236, 247 (3d Cir. 2015) (finding that lax cybersecurity resulting in a data breach falls within the meaning of "unfair" under the FTCA); *Equifax I*, 362 F. Supp. 3d at 1327.

4880-7098-1317, v. 1

inadequate data security measures continuing to put their PII/PHI in jeopardy. *See Smith v. Wm. Wrigley Jr. Co.,* 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (noting FDUTPA makes "declaratory and injunctive relief available to a broader class of plaintiffs than could recover damages.").

### 3. Kansas Consumer Protection Act (Count XII)

HCA's argument that "Plaintiff Hinds fails to clear the high bar of pleading 'deceptive' or 'unconscionable' conduct" is directly contrary to Kansas law. Mem. at 34. "One of the enumerated purposes of the [Kansas CPA] is 'to protect consumers from suppliers who commit deceptive and unconscionable practices.'" *Martinez v. Hobbs Mech., Inc.*, 2021 WL 3439219, at *5 (Kan. Ct. App. Aug. 6, 2021) (quoting Kan. Stat. § 50-623(b)). The *Martinez* court noted that "[t]he Act is to be liberally construed to promote this purpose" and reversed the "district court's restrictive interpretation of the [Kansas CPA, which] would seriously undermine the legislative intent of the Act." *Id.*; *see also Nieberding v. Barrette Outdoor Living, Inc.*, 2012 WL 6024972, at *5 (D. Kan. Dec. 4, 2012) (declining to dismiss plaintiff's Kansas CPA claim). Plaintiffs state a Kansas CPA claim where they allege HCA's inadequate data security was deceptive and unconscionable. *See* Compl. ¶¶ 428-35. Thus, the Court should decline to dismiss the Kansas CPA claim.

### 4. Kentucky Consumer Protection Act (Count XII)

The Kentucky CPA prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170(1). The terms "false, misleading and deceptive" are given their ordinary meaning as "understood by a reasonably prudent person of common intelligence." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988). Whether "any particular action is unfair, false, misleading, or deceptive it is to be decided by a jury" and thus it "is inappropriate for the Court to determine in the context of [a] summary judgment motion," much less a motion to dismiss. *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D.

33

4880-7098-1317, v. 1

Ky. 2014). HCA contends Watkins does not allege an ascertainable loss under the Kentucky CPA, but acknowledges he alleges "'late fees or declined payment fees' totaling '$300.00 altogether as a result of failed automatic payments ties to his bank debit cards.'" Mem. at 35 (quoting Compl. ¶ 172. HCA contends this is not ascertainable loss because Watkins does not say if the fees were forgiven. *Id.* However, that is a factual matter not suitable for resolution at the motion to dismiss stage. *See also supra* § I.A.1 (detailing how even reimbursed funds are injury).

Finally, to the extent HCA argues Watkins cannot maintain a class action under the Kentucky CPA, this argument fails. HCA cites two non-Kentucky cases—*In re Target Corp.*, 66 F. Supp. 3d at 1165 and *In re Anthem*, 162 F. Supp. 3d at 999—for this proposition. Mem. at 35. But as a Kentucky district court properly noted, "[t]here is no explicit prohibition of class actions in the provision quoted above or anywhere else in the [Kentucky CPA]." *Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903, at *3 (W.D. Ky. Sept. 27, 2017). Noting that "class actions under the [Kentucky CPA] have been previously certified by this Court and Kentucky state courts on several occasions," the court held that the venue provisions of the Kentucky CPA "do not prohibit class actions." *Id.* (collecting cases and rejecting conclusions of *Target* and *Anthem*).

### 5. Tennessee Consumer Protection Act (Count XIV)

"To state a claim under the Tennessee Consumer Protection Act ("TCPA"), the plaintiff must allege that the defendant engaged in an unfair or deceptive act or practice." *Asurion, LLC v. SquareTrade, Inc.*, 407 F. Supp. 3d 744, 751 (M.D. Tenn. 2019). "Whether a specific representation is 'unfair' or 'deceptive' is a question of fact." *Id.* (quoting *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009)). HCA contends Plaintiff Walters pleads no facts supporting either an unfair or deceptive claim under the statute. But as the Tennessee Supreme Court has noted, the TCPA is "to be construed consistently with the Federal Trade

34

Commission and federal courts' interpretations of the Federal Trade Commission Act." *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009) (citing Tenn. Code § 47-18-115). Mem. at 35. As noted *supra* n.4, the failure to maintain reasonable and appropriate data security for PII/PHI violates Section 5 the FTC Act, making such practices unfair and deceptive under the TCPA.

HCA's argument that Plaintiff Walters has not alleged loss or injury is also unavailing. "To be 'substantial,' consumer injury must be more than trivial or speculative." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 117 (Tenn. Ct. App. 2005). "Substantial injury usually involves monetary injury or unwarranted health and safety risks." *Id.* " Consumer injury will be considered substantial if a relatively small harm is inflicted on a large number of consumers or if a greater harm is inflicted on a relatively small number of consumers." *Id.* Here, Plaintiff Walters alleges a monetary injury in the form of unauthorized charges on her financial accounts and receipt of a bill for a medical appointment that was not hers and asserts this claim on behalf of a presumably large number of Tennessee class members. Compl. ¶ 157. This alone is sufficient to allege injury.

### 6. Virginia Consumer Protection Act ("VCPA") (Count XVI)

The VCPA prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code. Ann. § 59.1-200(14). HCA's arguments on pleading with particularity, actual damages, and reimbursements have already been addressed herein. *See infra* § III.B; *supra* § I.A.1. Plaintiff J.B.'s allegations that HCA's failure to employ adequate data security was deceptive and fraudulent in connection with a consumer transaction, *see, e.g.*, Compl. ¶¶ 498-502, are sufficient to state a VCPA claim.

HCA argues Plaintiff J.B. cannot pursue this claim for a class. Mem. at 36. However:

> Virginia's prohibition [on class actions] is in Virginia's procedural law, not the substantive VCPA. *In re Hardieplank Fiber Cement Siding Litig.*, [] 2013 WL 3717743, at *17 (D. Minn. July 15, 2013). Because Virginia's class action ban is not part of the VCPA, and applies outside the context of the VCPA, it is procedural

35

rather than substantive, and is precluded by [Fed. R. Civ. P.] 23. The Court will certify Plaintiffs' claim for . . . violation of the Virginia Consumer Protection Act.

*In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016); *see also Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555 (M.D. Tenn. 2020) (finding Fed. R. Civ. P. 23 preempts Virginia law prohibiting class action treatment of claims under the VCPA); *Milisits v. FCA US LLC*, 2021 WL 3145704, at *12 (E.D. Mich. July 26, 2021) (same). Accordingly, the VCPA claim is well-pled.

### B. The Heightened Rule 9(b) Pleading Standard Is Inapplicable to Plaintiffs' Claims.

HCA contends that Plaintiffs' state statutory claims must be dismissed because they are not pled in accordance with Rule 9(b). Mem. at 36-39. Critically, as a threshold matter, Plaintiffs' claims under the California UCL, FDUTPA, and the Kansas CPA are *not* required to meet Rule 9(b)'s heightened pleading standard. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021) (noting that claims under the "unlawful" and "unfair" prongs of the UCL are not subject to Rule 9(b)'s heightened pleading requirements); *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("FDUTPA claims seek a remedy for conduct distinct from traditional common law torts such as fraud. As such, the uniqueness of the cause of action place it outside the ambit of Rule 9(b)." (collecting cases)); *Tomlinson v. Ocwen Loan Servicing, LLC,* 2015 WL 7853957, at *2 (D. Kan. Dec. 3, 2015) ("Although some of the claims sound in fraud, [Kansas CPA] claims need not be pleaded with particularity.").

Plaintiffs' remaining consumer protection act claims (Counts XIII, XIV, XVI) also do not require heightened pleading because they are each, in part, premised upon conduct that violates

4880-7098-1317, v. 1

Section 5 of the FTC Act, *see* Compl. ¶¶ 229-30, 403-05, 414, 427, 443, 457, 497.[4] Where a claim is premised on the FTC Act, courts have held the heightened Rule 9(b) pleading standard is not required. *See SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013); *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 628 (D.N.J. 2014) (opining that a deception claim based on conduct violating Section 5 of the FTC Act does not require Rule 9(b) treatment), *aff'd* 799 F.3d 236 (3d Cir. 2015). Other courts, including those in the data breach context, have rejected the heightened standard for state statutory claims where the claims do not sound in fraud. For example, in *Equifax I*, the defendant argued Rule 9(b) applied to the state consumer protection laws of multiple states in a class action with representatives from all 50 states. 362 F. Supp. 3d at 1335. The court rejected this argument because the plaintiffs' unfair and deceptive trade practices claims did not "sound in fraud" and "it is not enough that a claim be near enough to fraud, or fraud-like for Rule 9(b) to apply." *Id.* at 1335-36. To "sound in fraud," the elements of the claim must be similar to that of common law fraud, requiring, among other things, proof of scienter, reliance, and injury. *Id.* The court concluded the defendants failed to show the state statutes had elements similar to common law fraud. *Id.*

However, even if Plaintiffs are required to plead their statutory claims with particularity, the allegations in the Complaint satisfy Rule 9(b) because they state the who, what, where, and

---

[4] Defendant incorrectly states the six state consumer protection statutes on which Plaintiffs rely require intentional misrepresentations. The case law, including cases on which Defendant relies, confirms they do not. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1232 (S.D. Fla. 2021) ("[K]nowledge of a deceptive act is not required to state a claim under FDUTPA."); *Doe 7 v. Univ. of Kansas*, 2017 WL 4037704, at *4 (D. Kan. Sept. 13, 2017) ("intent is a requirement for [only] some violations of the Kansas CPA" namely claims under § 50-626(b)(2)-(3), but "intent is not required" under § 50-626(b)(1)); *but see In re Motor Fuel Temperature Sales Prac. Litig.*, 867 F. Supp. 2d 1124, 1140 (D. Kan. 2012) (concluding Kansas courts do "not support such a strict reading of the term 'willful' in the KCPA" that would require plaintiffs to prove intent to defraud under § 50-626(b)(2)-(3)); *Sullivan v. Unidentified Emp.*, 2021 WL 6882417, at *4 (W.D. Ky. July 8, 2021) ("grossly negligent" conduct establishes violation of Kentucky CPA).

4880-7098-1317, v. 1

when of the wrongful conduct. First, Plaintiffs identify the "who": HCA failed to properly secure the PII/PHI of Plaintiffs and the Class. Compl. ¶¶ 1, 6, 9. Second, Plaintiffs, plead affirmative misrepresentations in which HCA stated it would protect Plaintiffs' PII/PHI and/or that that PII/PHI was not involved in the Breach. *Id.* ¶¶ 190-91, 196. Third, Plaintiffs detail specific material omissions and/or deceptive acts in HCA's data security practices. *Id.* ¶¶ 229-36, 240-42, 249. Fourth, Plaintiffs provide the "when and where" for HCA's misrepresentations. HCA's inadequate data security policies were in effect prior to and after the Breach. It misrepresented its data security practices on its website in its "Code of Conduct," and misrepresented the nature of the information disclosed in the Breach in the "Data Security Incident" report on its website. *Id.* ¶¶ 3, 9, 10, 190-91, 194-96. Finally, Plaintiffs pled reliance by stating they would not have provided their PII/PHI to HCA had they known HCA would make it Internet-accessible and not properly secure it. *Id.* ¶¶ 12, 23, 26, 34-35. In data breach cases, such statements suffice to meet the limited reliance requirements in some consumer protection statutes. *See*, *e.g.*, *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (A "misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact."); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1251 (D. Colo. 2018) (plaintiffs sufficiently alleged fraudulent omission under California law by alleging they "never would have allowed their [PII/PHI] . . . to be provided to [HCA] if they had been told or knew that [HCA] failed to maintain sufficient security to keep such data from being hacked and taken by others").

Thus, Plaintiffs sufficiently allege the specific fraudulent and deceptive acts required under Rule 9(b). *See, e.g.*, *In re Cap. One*, 488 F. Supp. 3d at 419 (concluding California plaintiffs satisfied heightened pleading requirements where they alleged named defendants "retained and

38

stored Plaintiffs' data in an insecure manner and made affirmative misrepresentations and material omissions regarding the adequacy of that security . . . [and that] the deficient data security policies and representations were in place prior to the data breach"); *id.* at 424 (approving FDUTPA claim); *U.S. ex rel. Pogue v. Am. Healthcorp, Inc.*, 977 F. Supp. 1329, 1333 (M.D. Tenn. 1997) (denying motion to dismiss "although no specific dates . . . [were] identified").

### C.      Plaintiffs Have Properly Alleged a Claim Under the CMIA.

Plaintiffs have properly alleged violations of §§ 56.101(a) & 56.36(b) of the CMIA. Section 56.101(a) provides that every health care provider and contractor "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information." 18 Cal. Civ. Code § 56.101(a). Further, any health care provider or contractor "who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of [§] 56.36." *Id.* HCA argues the type of medical information stolen in the Breach is not protected by the CMIA, which applies only to "substantive information regarding a patient's medical history." Mem. at 39. HCA insists that "names, cities, states, zip codes, emails, telephone numbers, dates of birth, gender, patient service dates, patient service locations, and next appointment dates" are not protected medical information. *Id.* But, the CMIA broadly defines "medical information" as:

> [A]ny individually identifiable information . . . in possession of or derived from a provider of health care, health care service plan . . . . regarding a patient's medical history, mental health application information, mental or physical information, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, **such as the patient's name, address, electronic mail address, telephone number, or social security number**, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.

39

Cal. Civ. Code § 56.05(i) (emphasis added). Likewise, "electronic health records," which are also included in § 56.101(b)(1)(A), are defined as "electronic records of health-related information on an individual that is created, gathered, managed, and consulted by authorized health care clinicians and staff." The PII/PHI Plaintiffs allege was involved in the Breach was maintained by and in the possession of HCA, "a provider of healthcare" relating to Plaintiffs' "medical history," and "reveals the identity of the individual" "alone or in combination with other publicly available information." Moreover, and once again, Plaintiffs allege that although HCA claimed the stolen information "did not include 'clinical information, such as treatment, diagnosis, or condition,'" its claims were "contradicted by statements on the dark web, on which the hacker ostensibly responsible for the [Breach] stated, 'I have emails with health diagnosis that corresponds to a clientID.'" Compl. ¶ 196. Accordingly, Plaintiffs have sufficiently alleged HCA's failure to protect the confidentiality of medical information in violation of the CMIA. *See In re Ambry Genetics Breach Litig.*, 567 F. Supp. 3d 1130, 1148 (C.D. Cal. 2021); *Stasi*, 501 F. Supp. 3d at 922.

While HCA argues that claims under § 56.10 are barred where there is no affirmative act by HCA, § 56.101 contains no such requirement. Indeed, § 56.101 "does not require an affirmative communicative act" but is satisfied where a defendant "negligently allow[s] information to end up in the possession of an unauthorized person. A plaintiff must allege a defendant's negligence resulted in unauthorized or wrongful access to that information, *i.e.*, that the information was improperly viewed or otherwise accessed." *In re Ambry Genetics.*, 567 F. Supp. 3d at 1148. Plaintiffs allege that HCA negligently allowed their PHI to end up in the hands of unauthorized persons (cybercriminals). Compl. ¶¶ 390, 391-92, 395, 396-97. Plaintiffs also allege unauthorized persons improperly viewed or otherwise accessed that information. *Id.* ¶¶ 390, 393.

Therefore, Plaintiff Marcisz has adequately stated a CMIA claim under § 56.101.

4880-7098-1317, v. 1

**IV.    Plaintiffs' Declaratory Judgment Act Claim Is Well-Pled.**

HCA criticizes Plaintiffs' request for declaratory judgment because it was stated as a freestanding cause of action, but that is no issue in this Circuit. *See*, *e.g.*, *Kondauer Capital Corp. v. Smith*, 802 F. App'x 938, 943 (6th Cir. 2020) (holding party "plausibly state[d] a claim for declaratory relief under the Declaratory Judgment Act."). Whether as a cause of action or a remedy, declaratory relief is appropriate here. Indeed, the Complaint details Plaintiffs are at imminent risk of additional compromises of their PII/PHI, so long as it remains in HCA's hands. *See* Compl. ¶¶ 267, 375-81 (detailing bases for declaratory judgment); *see also id.* ¶¶ 212-20 (describing high risk of cyberattacks faced by healthcare companies); *id.* ¶¶ 221-42 (explaining how HCA does not comply with industry data security norms and how this noncompliance caused the Breach and invites future breaches). Therefore, the DJA claim should not be dismissed.

**CONCLUSION**

Accordingly, the Court should deny HCA's Motion to Dismiss in its entirety.

Dated: June 3, 2024.                                    Respectfully submitted,

*/s/ J. Gerard Stranch, IV*_____
J. Gerard Stranch, IV (BPR 23045)
**STRANCH, JENNINGS &**
**GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
E: gstranch@stranchlaw.com

Jean S. Martin (admitted *pro hac vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 559-4908
E: jeanmartin@forthepeople.com

4880-7098-1317, v. 1

*Co-Lead Counsel for Plaintiffs*

Jillian Dent (admitted *pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
E: dent@stuevesiegel.com

Gary Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
E: gklinger@milberg.com

Jeff Ostrow (admitted *pro hac vice*)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
E: ostrow@kolawyers.com

James Pizzirusso (admitted *pro hac vice*)
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
E: jpizzirusso@hausfeld.com

Sabita J. Soneji (admitted *pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
E: ssoneji@tzlegal.com

*Plaintiffs' Executive Committee*

42

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 3rd day of June, 2024 upon the following:

**Andrew J. Shamis**
Shamis & Gentile, PA
14 NE 1st Avenue
Suite 1205
Miami, FL 33132
(305) 479-2299
Fax: (786) 623-0915
Email: ashamis@shamisgentile.com

**Jeffrey M. Ostrow**
Kopelowitz Ostrow P.A.
One West Las Olas Blvd
Suite 500
Fort Lauderdale, FL 33301
954-525-4100
Fax: 954-525-4300
Email: ostrow@kolawyers.com

**Kristen Lake Cardoso**
Kopelowitz Ostrow P.A.
One West Las Olas Blvd
Suite 500
Fort Lauderdale, FL 33301
954-990-2218
Fax: 954-525-4300
Email: cardoso@kolawyers.com

**Steven Sukert**
Kopelowitz Ostrow P.A.
One West Las Olas Blvd
Suite 500
Fort Lauderdale, FL 33301
954-284-1520
Fax: 954-525-4300
Email: sukert@kolawyers.com

**William B. Federman**
Federman & Sherwood
10205 N Pennsylvania Avenue

Oklahoma City, OK 73120
(405) 235-1560
Fax: (405) 239-2112
Email: wbf@federmanlaw.com

**Alexandra M. Honeycutt**
Milberg Coleman Bryson Phillips
Grossman, PLLC
800 S. Gay Street
Suite 1100
Knoxville, TN 37929
865-247-0080
Fax: 865-522-0049
Email: ahoneycutt@milberg.com

**David K. Lietz**
Milberg Coleman Bryson Phillips
Grossman, PLLC
5335 Wisconsin Avenue NW
Suite 440
Washington, DC 20015
866-252-0878
Fax: 202-686-2877
Email: dlietz@milberg.com

**Gary M. Klinger**
Milberg Grossman Bryson Phillips
Grossman PLLC
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
866-252-0878
Email: gklinger@milberg.com

**J. Corey Asay**
Morgan & Morgan (Lexington Office)
333 W. Vine St.
Suite 1200
Lexington, KY 40507
(859) 286-8368

43

Fax: (859) 286-8384
Email: casay@hkm.com

**Anthony A. Orlandi**
**Benjamin A. Gastel**
**Joey P. Leniski**
**Tricia Herzfeld**
Herzfeld, Suetholz, Gastel, Leniski & Wall,
PLLC
223 Rosa L Parks Ave
Suite 300
Nashville, TN 37203
615-800-6225
Email: tony@hsglawgroup.com
Email: ben@hsglawgroup.com
Email: joey@hsglawgroup.com
Email: tricia@hsglawgroup.com


**Brandon P. Jack**
Arnold Law Firm
865 Howe Avenue
Sacramento, CA 92825
916-239-4784
Email: bjack@justice4you.com


**Gregory Haroutunian**
Arnold Law Firm
865 Howe Avenue
Sacramento, CA 92825
916-777-7777
Email: gharoutunian@justice4you.com


**M. Anderson Berry**
Arnold Law Firm
865 Howe Avenue
Sacramento, CA 92825
916-777-7777
Email: aberry@justice4you.com


**Jalle H. Dafa**
Lieff, Cabraser, Heimann & Bernstein, LLP
(San Francisco)
275 Battery Street
29th Floor

San Francisco, CA 94111-3339
(415) 956-1000
Email: jdafa@lchb.com


**Jason Lichtman**
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street
8th Floor
New York, NY 10013-1413
(212) 355-9500
Email: jlichtman@lchb.com


**John Tate Spragens**
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900
Fax: (615) 682-8533
Email: john@spragenslaw.com


**Kenneth S. Byrd**
Lieff, Cabraser, Heimann & Bernstein, LLP
(Nashville Office)
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
(615) 313-9000
Fax: (615) 313-9965
Email: kbyrd@lchb.com


**Mark P. Chalos**
Lieff, Cabraser, Heimann & Bernstein, LLP
(Nashville Office)
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
(615) 313-9000
Email: mchalos@lchb.com


**Michael W. Sobol**
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street
30th Floor
San Francisco, CA 94111-3339
(415) 956-1000
Email: msobol@lchb.com

44

**Bart D. Cohen**
Bailey Glasser LLP
1622 Locust Street
Philadelphia, PA 19103
304-345-6555
Fax: 304-342-1110
Email: bcohen@baileyglasser.com

**Abby E. McClellan Paradise**
Stueve Siegel Hanson LLP
460 Nichols Road
Ste 200
Kansas City, MO 64112
816-714-7100
Fax: 816-714-7101
Email: mcclellan@stuevesiegel.com

**Brandi S. Spates**
Stueve Siegel Hanson LLP
460 Nichols Road
Ste 200
Kansas City, MO 64112
816-714-7100
Email: spates@stuevesiegel.com

**Jillian R. Dent**
460 Nichols Road
Suite 200
Kansas City, MO 64112
(816) 714-7100
Email: dent@stuevesiegel.com

**John Austin Moore**
Stueve Siegel Hanson LLP
460 Nichols Road
Ste 200
Kansas City, MO 64112
(816) 714-7100
Email: moore@stuevesiegel.com

**Norman Siegel**
Stueve Siegel Hanson LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
816-714-7100

Email: siegel@stuevesiegel.com

**Gary S. Graifman**
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, NY 10977
(845) 356-2570
Fax: (845) 356-4335
Email: ggraifman@kgglaw.com

**Melissa R. Emert**
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, NY 10977
(845) 356-2570
Fax: (845) 356-4335
Email: memert@kgglaw.com

**Adam S. Nightingale**
Eastman & Smith Ltd.
One SeaGate, 17th Floor
P O Box 10032
Toledo, OH 43604
(419) 247-1728
Email: asnightingale@eastmansmith.com

**Amanda V. Boltax**
Hausfeld LLP
888 16th Street, NW
Suite 300
Washington, DC 20006
516-477-8339
Email: mboltax@hausfeld.com

**James J. Pizzirusso**
Hausfeld LLP
888 16th Street, NW
Suite 300
Washington, DC 20006
202-540-7200
Email: jpizzirusso@hausfeld.com

45

4880-7098-1317, v. 1

**Steven M. Nathan**
Hausfeld LLP
33 Whitehall Street
14th Floor
New York, NY 1100
646-357-1100
Fax: 212-202-4322
Email: snathan@hausfeld.com

**Francesca K. Burne**
Morgan & Morgan (Tampa Office)
201 N Franklin Street
7th Floor
Tampa, FL 33602
813-424-5618
Email: fburne@forthepeople.com
*ATTORNEY TO BE NOTICED*

**Jean Sutton Martin**
Morgan & Morgan (Tampa Office)
201 N Franklin Street
7th Floor
Tampa, FL 33602
(813) 223-5505
Fax: (813) 221-7366
Email: jeanmartin@forthepeople.com
*ATTORNEY TO BE NOTICED*

**Robert B. Keaty , II**
Morgan & Morgan (Nashville Office)
810 Broadway
Suite 105
Nashville, TN 37203
(615) 928-9901
Email: bkeaty@forthepeople.com

**James E. Cecchi**
Carella, Byrne, Cecchi, Olstein, Brody &
Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
Email: jcecchi@carellabyrne.com

**Jason H. Alperstein**
Carella, Byrne, Cecchi, Olstein, Brody &
Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
Email: jalperstein@carellabyrne.com

**Lori G. Feldman**
George Feldman McDonald PLLC
102 Half Moon Bay Drive
Croton on Hudson, NY 10520
917-983-9321
Fax: 888-421-4173
Email: lfeldman@4-Justice.com

**Lucy McShane**
McShane & Brady, LLC
1656 Washington Street
Suite 120
Kansas City, MO 64108
(816) 888-8010
Email: lmcshane@mcshanebradylaw.com

**Maureen M. Brady**
McShane & Brady, LLC
1656 Washington Street
Suite 120
Kansas City, MO 64108
816-888-8010
Email: mbrady@mcshanebradylaw.com

**Michael Liskow**
George Feldman McDonald, PLLC
745 Fifth Ave
Suite 500
New York, NY 10151
561-232-6002
Email: mliskow@4-justice.com

**John G. Emerson**
Emerson Firm, PLLC
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
(800) 551-8649
Fax: (501) 286-4659

46

Email: jemerson@emersonfirm.com

**Samuel M. Ward**
Barrack, Rodos & Bacine
One America Plaza
600 W Broadway
Suite 900
San Diego, CA 92101
(619) 230-0800
Fax: (619) 230-1874
Email: sward@barrack.com

**Sidney W. Gilreath**
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902-1270
(865) 637-2442
Email: gilknox@sidgilreath.com

**Stephen R. Basser**
Barrack, Rodos & Bacine
One America Plaza
600 W Broadway
Suite 900
San Diego, CA 92101
(619) 230-0800
Fax: (619) 230-1874
Email: sbasser@barrack.com

**Gemma Seidita**
2000 Pennsylvania Avenue
Suite 1010
Washington, DC 20006
202-964-7691
Email: gseidita@tzlegal.com

**Sabita J. Soneji**
Tycko & Zavareei LLP
1970 Broadway
Suite 1070
Oakland, CA 94612
510-254-6808
Email: ssoneji@tzlegal.com

**Brian C. Gudmundson**
Zimmerman Reed, PLLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-341-0400
Email: brian.gudmundson@zimmreed.com

**Charles R. Toomajian III**
Zimmerman Reed, PLLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400
Email: charles.toomajian@zimmreed.com

**Rachel K. Tack**
Zimmerman Reed, PLLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-341-0400
Email: rachel.tack@zimmreed.com

**David A. McLaughlin**
901Attorneys, LLC
200 Jefferson Avenue
Suite 900
Memphis, TN 38103
901-671-1551
Fax: 901-671-1571
Email: david@901attorneys.com

**Gary F. Lynch**
Lynch Carpenter, LLP
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
412-322-9243
Email: gary@lcllp.com

**Kelly Iverson**
Lynch Carpenter LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

4880-7098-1317, v. 1

412-322-9243
Email: kelly@lcllp.com

**Nicholas A. Colella**
Lynch Carpenter LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
Fax: (412) 231-0246
Email: nickc@lcllp.com

**Cecily C. Jordan**
Tousley Brain Stephens PLLC
1200 Fifth Avenue
Suite 1700
Seattle, WA 98101
(206) 682-5600
Fax: (206) 682-2992
Email: cjordan@tousley.com

**Kim D. Stephens**
Tousley Brain Stephens PLLC
1200 Fifth Avenue
Suite 1700
Seattle, WA 98101
(206) 682-5600
Fax: (206) 682-2992
Email: kstephens@tousley.com

**Ari Y. Basser**
Pomerantz LLP (CA Office)
1100 Glendon Ave
15th Floor
Los Angeles, CA 90024
310-432-8492
Email: abasser@pomlaw.com

**Jordan L. Lurie**
Capstone Law APC
1875 Century Park East
Suite 1000
Los Angeles, CA 90067
(310) 556-4811
Fax: (310) 943-0396
Email: Jordan.Lurie@capstonelawyers.com

**Paul Kent Bramlett**
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com

**Robert P. Bramlett**
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: robert@bramlettlawoffices.com

**Claire Torchiana**
Cohen, Milstein, Sellers & Toll PLLC (NY Office)
88 Pine Street
14th Floor
New York, NY 10005
(212) 838-7797
Email: ctorchiana@cohenmilstein.com

**Douglas J. McNamara**
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue N.W.
Suite 500
Washington, DC 20005
202-408-4600
Fax: 202-408-4699
Email: dmcnamara@cohenmilstein.com

**Krysta Kauble Pachman**
Susman Godfrey L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 789-3100
Email: kpachman@susmangodfrey.com

48

**Stephen E. Morrissey**
Susman Godfrey LLP
401 Union Street
Suite 3000
Seattle, WA 98101
(206) 516-3880
Email: smorrissey@susmangodfrey.com

**Vineet Bhatia**
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002-5096
(713) 653-7855
Email: vbhatia@susmangodfrey.com

**Hannah R. Lazarz**
Lieff, Cabraser, Heimann & Bernstein, LLP
(Nashville Office)
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
(765) 418-7273
Email: hlazarz@lchb.com

**Blake G. Abbott**
Poulin / Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
843-614-8888
Email: blake.abbott@poulinwilley.com

**Paul J. Doolittle**
Poulin / Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
843-834-4712
Email: paul.doolittle@poulinwilley.com

**Annemarie Janine De Bartolomeo**
Tadler Law LLP
22 Bayview Avenue
Suite 200
Manhasset, NY 11030
(212) 946-9300
Email: ajd@tadlerlaw.com

**Ariana J. Tadler**
Tadler Law LLP
22 Bayview Avenue
Suite 200
Manhasset, NY 11030
212-946-9453
Fax: 646-844-0331
Email: atadler@tadlerlaw.com

**Michael Kind**
Kind Law
8860 S. Maryland Parkway
Suite 106
Las Vegas, NV 89123
(702) 337-2322
Fax: (702) 329-5881
Email: mk@kindlaw.com

**Andrew B. Clubok**
Latham & Watkins LLP (DC Office)
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
202-637-2200
Email: andrew.clubok@kirkland.com

**Kathryn Hannen Walker**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
615-742-7855
Email: kwalker@bassberry.com

**Marissa Alter-Nelson**
Latham & Watkins LLP (NY Office)
1271 Avenue of the Americas
New York, NY 10020-1345
212-906-1200
Email: marissa.alter-nelson@lw.com

**Melanie M. Blunschi**
Latham & Watkins LLP
505 Montgomery Street
Suite 2000

49

4880-7098-1317, v. 1

San Francisco, CA 94111
415-391-0600
Email: melanie.blunschi@lw.com

**Peter C. Rathmell**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
(615) 742-6268
Email: peter.rathmell@bassberry.com

**Susan E. Engel**
Latham & Watkins LLP (DC Office)
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
202-637-2200
Fax: 202-637-2201
Email: susan.engel@lw.com

**Taylor M. Sample**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
615-742-7909
Email: taylor.sample@bassberry.com

**W. Brantley Phillips , Jr.**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
615-742-6200
Email: bphillips@bassberry.com

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV

50

4880-7098-1317, v. 1