## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: HCA HEALTHCARE, INC. DATA SECURITY LITIGATION | Case No. 3:23-cv-00684<br><br>Hon. Jack Zouhary |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### I.       INTRODUCTION

Plaintiffs, Gregory Crossman, Arthur Dekenipp, Mary Elena Del Vecchio, Carina Gutierrez, Kelsey Hinds, J.B. (a minor, through his guardian/mother, J.N.), Deborah Jordan, Gregory Marcisz, Paula Menard, Gary Silvers, Linda Simon, Michael Tighe, Colleen Walters, Jared Terrell Watkins, and Justin Taylor Womack ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), respectfully request that the Court grant preliminary approval of the proposed Class Action Settlement Agreement,[1] attached hereto as **Exhibit 1**, resolving their claims against Defendant HCA Healthcare, Inc. ("Defendant" or "HCA") in the above-captioned data privacy class action, on a nationwide basis. The proposed Settlement provides Class Members an excellent result, including substantial relief comparable to or better than other settlements approved in similar data breach cases.

Specifically, Plaintiffs request an order (1) conditionally certifying the proposed Class for the purpose of Settlement; (2) conditionally appointing Plaintiffs as Class Representatives; (3) affirming its appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC and Jean

---

[1] Unless otherwise indicated, capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement.

Martin of Morgan & Morgan Complex Litigation Group as Lead Class Counsel, as well as Jillian Dent of Stueve Siegel Hanson LLP, Sabita Soneji of Tycko & Zavareei LLP, Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeffrey Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert P.A., and James Pizzirusso of Hausfeld LLP as Members of Plaintiffs' Executive Committee; (4) approving the form and substance of the notice program; (5) preliminarily approving the Settlement as within range of possible final approval; and (6) appointing the settlement administrator and ordering it to conduct the notice program.

If approved, the Settlement will establish Settlement Benefits, which will be used to make Cash Payments to Class Members, provide Credit Monitoring and Insurance Services to Class Members, and cover Administrative Expenses, Attorneys' Fees and Costs, and Class Representative Service Awards, if approved by the Court, as well as any applicable taxes. Under the terms of the Settlement, each Class Member will have the option to submit a claim for one of two Settlement Benefits: (1) reimbursement of actual losses incurred as a result of the Data Breach, up to $5,000.00 per Claimant ("Documented Loss Payment"); and (2) one year of Credit Monitoring and Insurance Services ("CMIS"), which will include credit monitoring, fraud, consultation, and identity theft restoration services. The Settlement also provides robust injunctive relief in the form of business practice changes designed to strengthen HCA's data security and prevent future data security incidents.

The Settlement was reached following well-informed, arm's-length negotiations, including a formal mediation conducted by a well-respected mediator, Robert A. Meyer of JAMS. Given the risks and uncertainties of further, protracted litigation, and the circumstances, nature and details of the underlying data incident, the Settlement represents an outstanding result for the Settlement Class that is well within range of fair, reasonable, and adequate. Accordingly, Plaintiffs request

2

that the Court enter an order preliminarily approving the Settlement, conditionally certifying the Settlement Class, directing Notice to the Settlement Class, and scheduling a Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2). HCA has reviewed this motion and does not oppose the relief sought.

## II.    BACKGROUND

### A.  The Litigation

This case arises from a data breach incident perpetrated by cybercriminals who gained unauthorized access to an external storage location for data that Defendant used to automate the formatting of marketing email communications with patients, and then exfiltrated Plaintiffs' and Class Members' personal information (the "Data Incident"). Defendant announced the Data Incident on or about July 10, 2023. The personal information of approximately 11 million HCA patients was compromised in the Data Incident, including: names, physical addresses, email addresses, telephone numbers, dates of birth, gender, service dates, locations, and next appointment dates (collectively, "Private Information").

Plaintiffs subsequently filed 27 putative class action lawsuits on behalf of persons whose Private Information was compromised in the Data Incident. Plaintiffs allege, *inter alia*, that Defendant failed to adequately secure and protect their Private Information. On August 23, 2023, the Court entered an order consolidating the cases pursuant to Federal Rule of Civil Procedure 42(a). ECF No. 19. On December 20, 2023, the Court appointed Jean Martin of Morgan & Morgan Complex Litigation Group and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Lead Counsel for Plaintiffs. ECF No. 113. On January 3, 2024, after consultation with Lead Counsel, the Court appointed a Plaintiffs' Executive Committee comprised of Jillian Dent of Stueve Siegel Hanson LLP, Sabita Soneji of Tycko & Zavareei LLP, Gary Klinger of Milberg

Coleman Bryson Phillips Grossman, PLLC, Jeffrey Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert P.A., and James J. Pizzirusso of Hausfeld LLP. ECF No. 115.

On February 2, 2024, Plaintiffs filed a Consolidated Class Action Complaint. ECF No. 120. On April 4, 2024, HCA filed a Motion to Dismiss (ECF No. 127) and for judicial notice (ECF No. 126), which Plaintiffs opposed. ECF Nos. 134, 135. The Court granted, in part, and denied, in part, Defendant's Motions to Dismiss (dismissing Counts II-VIII) and for judicial notice. ECF Nos. 148, 149. The parties then worked on a joint protective order and ESI order which the Court signed on August 30, 2024. ECF Nos. 156, 157. The parties then sought a stay which the Court granted while the parties attempted to mediate this dispute. ECF No. 168.

### b. Settlement Negotiations and Mediation

On February 19, 2025, the Parties participated in a full-day, formal mediation before experienced mediator Robert A. Meyer of JAMS. In advance of the mediation, the Parties met and exchanged confidential pre-mediation discovery, including, *inter alia*, information concerning: the mechanics and details of the Data Incident, the compromised data, Plaintiffs' claims and alleged damages, and HCA's defenses. The Parties also exchanged detailed mediation statements and additional information—including pertinent financial information—to facilitate negotiations. The mediation was hard-fought and productive, and with Mr. Meyer's assistance, the Parties reached an agreement in principle to settle the case. The Parties subsequently drafted a comprehensive Settlement Agreement, solicited bids from multiple settlement administration firms before agreeing upon a Settlement Administrator, drafted the Claim Form and Notice documents, and prepared this motion. Plaintiffs now respectfully request (and Defendant does not oppose) that the Court grant preliminary approval of the Settlement, which will authorize the dissemination of Notice to the Class and schedule a Final Approval Hearing for no earlier than 135 days from entry

of the Preliminary Approval Order.

### III. THE PROPOSED SETTLEMENT

#### A. Proposed Settlement Class

The proposed Settlement Class "means those Persons certified as a class for settlement purposes under Federal Rule of Civil Procedure 23(b)(2), 23(b)(3) and 23(e), consisting of all current HCA patients residing in the United States whose personal information was compromised in the Data Incident." Settlement Agreement ("S.A.") ¶ 1.33. Excluded from the Settlement Class are: (i) HCA's officers, directors, legal representatives, successors, subsidiaries, and assigns; and (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." *Id.*

#### B. Release

In exchange for the Settlement Benefits provided under the Settlement Agreement, Plaintiffs and Class Members will release any and all claims (i.e., the Released Claims) against Defendant and its respective agents, directors, officers, attorneys and employees acting on its behalf, as set forth in Section 9 of the Settlement Agreement. *Id.* ¶¶ 9.1-9.2. The Release is tailored to cover only claims that were asserted or that could have been asserted by Class Members related to or arising from the Data Incident. *Id.*

#### C. Compensation to Class Members

The Settlement provides significant relief to participating Class Members. Any Class Member who has incurred losses related to the Data Incident may submit a claim for reimbursement, up to $5,000 per claimant, in the form of a Documented Loss Payment. *Id.* ¶ 3.1(b). Class Members may also elect to submit a claim for one year of credit monitoring and insurance services, including up to $1,000,000 of identity theft insurance coverage. *Id.* ¶ 3.1(a). Class

Members will have ninety (90) days after the Notice Date to submit a claim. *Id.* ¶ 3.3.

Pursuant to the Settlement, Defendant will also adopt, maintain, and/or implement, for a period of at least two years, certain data and information security measures designed to strengthen Defendant's data security practices and prevent similar data security incidents in the future. *Id.* ¶ 2.1. These data security commitments directly benefit every Class Member irrespective of whether they file a Claim for Settlement Benefits.

### D. Notice Plan

The Parties selected Kroll Settlement Administration, LLC ("Kroll") as the Settlement Administrator, subject to Court approval. *Id.* ¶ 1.30. Kroll is a nationally recognized settlement administration firm that has handled dozens of similar data breach settlements across the country. Declaration of Kroll ("Kroll Decl.") ¶ 2.[2] Subject to the Court's approval, Kroll will administer the Notice Plan under the terms set forth in Sections 5 and 6 of the proposed Settlement.

Within ten (10) days of the entry of the Preliminary Approval Order, Defendant will provide Kroll with the name and last known email address or phone number of each Class Member. S.A. ¶ 5.3. Kroll will send Email Notice to each Class Member within thirty days of the Preliminary Approval Order. *Id.* ¶ 5.5. Moreover, if notice does not reach the appropriate percentage of Class Members, Kroll will use Publication Notice. *Id.* ¶ 1.25. Kroll will be responsible for ensuring that requisite notice is provided to appropriate federal and state officials in accordance with the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1715(b); S.A. ¶ 5.10.

The Notice will explain in plain language the procedure for Class Members to opt out or object to the material terms of the Settlement. S.A. ¶¶ 5.6-5.7. Kroll will also establish a dedicated Settlement Website to provide Class Members with relevant information and documents, including

---

[2] The Kroll Decl. is attached as **Exhibit 3**.

the Settlement Agreement, Claims and Notice Forms, and Court orders. *Id.* ¶ 1.35.

### E. Claims Process

The claims process is structured to ensure all Class Members have an adequate opportunity to review the terms of the Settlement Agreement, compile documents supporting their claims, and decide whether to participate, opt-out, object, or do nothing. Kroll will be responsible for reviewing the Claim Forms and determining if they are valid, timely, and complete. *Id.* ¶ 3.4. Should a claim be incomplete or defective, Kroll will notify the Claimant of the deficiencies (with reports to Lead Counsel and Defense Counsel) and notify the Claimant by email that they have 30 days to cure the deficiencies and re-submit their claim. *Id.*

### F. Requests for Exclusion and Objections

Should any Class Member wish to opt out of the Settlement, their opt-out request must be postmarked and sent to Kroll at the address set forth in the Notice no later than 60 days after the Notice Date *Id.* ¶ 5.8. Any opt-out request shall: (i) state the Settlement Class Member's full name, current address, and signature; and (ii) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class. *Id.* Failure to comply with these requirements and to timely submit an opt out request will result in the Settlement Class Member being bound by the terms of the Settlement. *Id.*

Any Class Member seeking to object to the Settlement must mail a letter to Settlement Lead Counsel and Counsel for Defendant, postmarked no later than 60 days after the Notice Date. *Id.* ¶ 5.9. The objector or their counsel may also file their objection with the Court through the Court's ECF system, with service on Settlement Lead Counsel and Defendant's Counsel made through the ECF system. *Id.* A valid objection to the Settlement must state: (1) the objector's full name, mailing address, telephone number, and email address (if any); (2) the case name and docket

number; (3) information identifying the objector as a member of the Settlement Class; (4) a written statement of all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel, if the objector is represented by counsel; (5) the identity of all counsel, if any, who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (6) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (7) the objector's signature. *Id.*

### G. Fees, Expenses, and Service Awards

Under the terms of the proposed Settlement, Plaintiffs may file a separate motion for Attorneys' Fees and Expenses up to $3,100,000. *Id.* at ¶ 8.2. The Settlement is not conditioned upon the Court's award of any attorneys' fees or expenses.

Plaintiffs have been dedicated and active participants on behalf of the Class they seek to represent. Joint Declaration of Lead Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl.") ¶ 12.[3] They actively assisted Lead Counsel and Plaintiffs' Executive Committee with their investigation, sat through multiple interviews, and provided supporting documentation and personal information throughout the process. *Id.* Lead Counsel and Plaintiffs' Executive Committee kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. *Id.* Each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery provided by the proposed Settlement would not have been possible without their efforts. *Id.* Plaintiffs have been vital in litigating this matter, have been personally involved in the case, and support the proposed

---

[3] The Counsel Decl. and its exhibits are attached as **Exhibit 2**.

Settlement. *Id.*

In view of these efforts, on behalf of Plaintiffs, Lead Counsel will petition the Court for approval of Service Awards in an amount up to $5,000 for each proposed Class Representative. This amount is consistent with service awards approved in other data breach class action settlements. *Id.* ¶ 13. The proposed Settlement is not conditioned upon the Court's award of any Service Awards. SA ¶ 7.3. Counsel herein requests that Plaintiffs Gregory Crossman, Arthur Dekenipp, Mary Elena Del Vecchio, Carina Gutierrez, Kelsey Hinds, J.B. (a minor, through his guardian/mother, J.N.), Deborah Jordan, Gregory Marcisz, Paula Menard, Gary Silvers, Linda Simon, Michael Tighe, Colleen Walters, Jared Terrell Watkins, and Justin Taylor Womack be appointed as Class Representatives.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without the approval of the court, and a finding that the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (citing *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986)). On a motion for preliminary approval, courts recognize a strong presumption in favor of voluntary settlement agreements that is "'especially strong' . . . 'in class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation.'" *Mullins v. Data Mgmt. Co.*, 2021 WL 2820560, at *4 (S.D. Ohio June 21, 2021) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)). Accordingly, at the preliminary approval stage, the bar to meet the fair, reasonable, and adequate standard is lowered. *See, e.g.*, *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *Lott v. Louisville Metro Gov't*, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) ("At the stage of preliminary

9

approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.") (internal citation omitted).

## A. The Settlement is "Fair, Reasonable, and Adequate" and Satisfies the Requirements of Rule 23(e)(2)

Rule 23(e)(2) sets forth the factors courts must consider in determining the fairness of a proposed class action settlement, including whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate [ . . . ]; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Here, the proposed Settlement satisfies each requirement of Rule 23(e).

### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Class

Pursuant to Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. Here, Plaintiffs, as the putative Class Representatives, have represented the Class admirably. They made themselves available to Lead Counsel when necessary, reviewed filings, provided Lead Counsel with documents and other evidence, and helped prosecute this case diligently. Counsel Decl. ¶ 12.

Lead Counsel who negotiated the proposed Settlement on behalf of Plaintiffs are experienced and respected class action litigators with significant experience in data breach cases. *See* Counsel Decl. ¶¶ 16 & Exs. A–B (firm resumes). Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Defendant's investigation of the Data Breach. *Id.* ¶¶ 7–9. Before any Settlement terms were negotiated, Lead Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Class Members, analyzed the documents and information produced by Defendant in advance of mediation, and developed a thorough understanding of the complex

technical issues underlying the claims and defenses in this matter, as well as the applicable laws of Tennessee and other relevant jurisdictions. *Id.* ¶ 10. Following the Parties' February 19, 2025 mediation, Lead Counsel, along with Plaintiffs' Executive Committee, drafted the proposed Settlement and its exhibits, revised those drafts, and negotiated the details of the final proposed Settlement with counsel for HCA. *Id.*. This factor weighs in favor of preliminary approval.

### 2. The Settlement Was Negotiated at Arms' Length

A strong presumption of fairness attaches to a proposed settlement where, as here, the parties negotiate at arm's length with the assistance of a mediator. *See Mullins*, 2021 WL 2820560, at *5 ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal citations omitted). Here, the proposed Settlement is the product of hard-fought, arm's-length negotiations between experienced attorneys on both sides, including a formal mediation overseen by an experienced mediator, Robert A. Meyer of JAMS. Counsel Decl. ¶ 9. This factor therefore weighs in favor of preliminary approval of the Settlement. *See Kutzback v. Riviana Foods, Inc.*, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023) (citing *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)).

### 3. The Benefits Provided to the Class are Adequate

The proposed Settlement is a fair and reasonable result that delivers tangible and immediate benefits to all Class Members. In determining whether the benefits provided by a proposed class action settlement are adequate, Federal Rule of Civil Procedure 23(e)(2)(C) directs district courts to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations weighs in favor of preliminary approval here

### i.  Costs, risks, and delay of trial and appeal

Comparing the proposed Settlement here with recoveries obtained for classes of consumer plaintiffs in other data breach settlements demonstrates the strength of this Settlement.[4] Moreover, the Settlement includes significant injunctive relief for the Class, as it requires HCA to implement and maintain enhanced data security measures designed to prevent similar data security incidents in the future. *See* S.A. ¶¶ 2.1-2.3. Because the Settlement benefits outweigh the risks and uncertainties of continued litigation—including the attendant time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal—this factor weighs in favor of preliminary approval of the Settlement.

### ii.  Method of distributing relief to the Class

The Settlement's proposed method of distributing relief to the class is not unduly burdensome and deters fraudulent claims. The list of Class Members will be provided by Defendant and validated by Kroll. The Settlement provides for effective Notice to Class Members (S.A. ¶¶ 5.1-5.5), and a straightforward procedure for Class Members to submit claims for Settlement Benefits (*id.* ¶¶ 3.1-3.6). This factor therefore weighs in favor of preliminary approval.

---

[4] *See, e.g.*, *In re Google Plus Profile Litig.*, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (approving $7.5 million settlement for 161 million consumers whose personal information was compromised); *Adkins v. Facebook, Inc.*, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief); *Linnins v. Haeco Americas, Inc.* (*f/k/a Timco Aviation Services, Inc.*), 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (approving settlement that included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was allegedly disclosed in a data breach); *Brady v. Due North Holdings, LLC*, No. 17-cv-01313, Final Approval Order and Judgment (Dkt. 65), at *2 (S.D. Ind. Oct. 16, 2018) (approving settlement that provided reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500, depending on settlement tier).

### iii.  Proposed attorneys' fee award

Lead Counsel have devoted significant time and financial resources to this litigation despite the uncertainties of prevailing on the merits, obtaining class certification, and establishing damages. Lead Counsel did not broach the topic of attorneys' fees until after agreeing on all substantive Settlement terms with HCA. Counsel Decl. ¶ 19. Plaintiffs intend to seek attorneys' fees of up to $3,100,000, subject to Court approval. S.A. ¶ 8.2. Courts in the Sixth Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *2 (E.D. Tenn. June 30, 2014) (awarding one-third of common fund which equated to a lodestar multiplier up to 2.5). Plaintiffs will file a separate motion with materials supporting the requested Fee Award and Costs in accordance with the Settlement Agreement. S.A. § 8.

### iv.  No additional agreements

Rule 23(e) requires the Court to consider any agreement reached between the Parties outside of the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). No such agreement exists in this case. Counsel Decl. ¶ 20.

### 4.  The Settlement Treats Class Members Equitably

A settlement need not require "pro rata distribution;" it must just be fair, reasonable and adequate. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). This requirement can be satisfied even when, as here, the Class Members will be entitled to different amounts based on the benefits they select. *See Peck v. Air Evac EMS, Inc.*, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based

on the actual number of unpaid overtime hours that each person worked.").

Here, all Class Members are eligible to file claims for the same benefits, if those benefits apply to them. All Class Members who can provide documentary evidence of any out-of-expenses fairly traceable to the Data Incident may request reimbursement for those expenses. S.A. ¶ 3.1(b). Alternatively, all Class Members are eligible to enroll in credit monitoring and insurance services. *Id.* ¶ 3.1(a). The proposed Settlement therefore treats all Class Members fairly and equitably relative to each other and in relation to the strengths of their claims. The Settlement also provides valuable non-monetary relief to the entire Class in the form of data security enhancements, which benefit all Class Members whether they submit a claim for Settlement Benefits or not. *Id.* ¶ 2.1.

**B.      The Proposed Settlement Also Satisfies the Traditional Factors Considered by the Sixth Circuit**

Courts in the Sixth Circuit evaluate the following factors in determining whether to approve a class action settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Pelzer v. Vassalle*, 655 Fed. App'x 352, 359 (6th Cir. 2016).

**1.      No Risk of Fraud or Collusion Exists**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands LLC*, 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). Furthermore, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Gokare v. Federal Express Corp.*, 2013 WL 12094870, at *3 (W.D. Tenn.

Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Here, no fraud or collusion influenced the Parties' settlement negotiations, which were facilitated by a well-qualified neutral mediator. Counsel Decl. ¶ 11. This factor weighs in favor of preliminary approval.

### 2. The Complexity, Expense, and Duration of Litigation

Data breach litigation is particularly complex because the law "has not yet been fully developed" and the parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa*, 2023 WL 6690705, at *7; *see also Jackson v. Nationwide Retirement Solutions, Inc.*, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) (noting that "the technical issues involved in data breach cases are complex"). Thus, the complexity and expense required to engage in prolonged data breach litigation also weighs in favor of preliminary approval. *See supra* Section IV. A.(3)(i).

### 3. The Amount of Discovery

Courts also consider the stage of the litigation and amount of discovery exchanged between the Parties. "[T]he absence of formal discovery is not unusual or problematic, [however,] so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth v. P & Z Carolina Pizza*, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021). Here, the Parties agreed to negotiate early resolution of this matter and ultimately agreed to a resolution without the need for expensive and prolonged discovery. Though the Parties have not exchanged formal comprehensive discovery, the informal discovery exchanged between the Parties during and leading up to mediation was more than sufficient to fully understand the relative positions of the Parties, including the strength of the case. Counsel Decl. ¶ 8. Thus, this factor also weighs in favor of preliminary approval.

### 4. Likelihood of Success on the Merits Weighs in Favor of Plaintiff

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). Courts, however, are "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Plaintiffs and Lead Counsel strongly believe that the claims presented in this case are meritorious and that Plaintiffs would prevail at trial. Counsel Decl. ¶ 21. Nonetheless, Plaintiffs and Lead Counsel understand the risks and delays associated with prolonged litigation and believe the benefits of the proposed Settlement here outweigh the risks and delays associated with continued litigation. *Id*. Indeed, if Plaintiffs continued with this litigation in lieu of Settlement, Plaintiffs and Class Members would likely face years of delays in obtaining access to important Settlement Benefits. Absent Settlement, Plaintiffs face the specter of protracted litigation including objections to class certification, a summary judgment motion, defending expert opinions, trial, and appeals. Though Plaintiffs and Lead Counsel believe in the strength of this case, they understand that these issues would present significant delay and risk, making settlement even more beneficial to the Class. Thus, this factor weighs in favor of preliminary approval.

### 5. Opinion of Lead Counsel and Class Representatives

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green v. Platinum Restaurants Mid-America LLC*, 2022 WL

1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Here, "the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable." *Id.* Plaintiffs and Lead Counsel support the Settlement here. Counsel Decl. ¶ 21.

### 6. Reaction of Absent Class Members

The reaction of absent Class Members will be an important consideration for the Court in determining whether to grant final approval. But this factor is not quantifiable at the preliminary approval stage, as the Court has not yet ordered Kroll to provide Class Members with Notice of the Settlement and any reaction of the Class has not yet manifested itself beyond the positive reaction of the putative Class Representatives.

### 7. Public Interest

Courts have often espoused "a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Coleman v. Amazon.com, Inc.*, 2025 WL 582495, at *6 (W.D. Tenn. Feb. 21, 2025) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). The strong public interest in favor of settlement supports preliminary approval.

## C. Certification of the Settlement Class is Appropriate

Parties seeking class certification for settlement purposes must satisfy the criteria of Federal Rule of Civil Procedure 23, including the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). Here, the proposed Settlement Class meets each requirement for conditional certification.

17

### 1. The Proposed Settlement Class is Ascertainable

A prerequisite to any Rule 23 action is the actual existence of a "class" that is readily ascertainable. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). To satisfy this requirement, a "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (citation omitted). Here, the proposed Class is readily ascertainable because Class Members will be identified using HCA's records. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015). Indeed, HCA's public data breach notification confirmed that it had identified approximately 11 million customers and patients that were impacted by the Data Incident and HCA also mailed breach notification letters out to all affected patients. Thus, HCA already possesses all the necessary information to readily identify and ascertain the Class.

### 2. The Certification Criteria of Rule 23(a) Are Satisfied

***Numerosity****.* Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Here, the size of the proposed Settlement Class is approximately 11 million individuals, which easily satisfies this requirement. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.").

***Commonality****.* Rule 23(a)(2) further requires that the claims present common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "The commonality test 'is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal citation omitted); *see also Walmart Stores, Inc. v. Dukes*, 564 U.S.

338, 359 (2011) ("[F]or purposes of Rule 23(a)(2), even a single common question will do."). Here, there are multiple common questions of both law and fact. Plaintiffs' and putative Class Members' claims derive from the same Data Incident and allege the same wrongdoing—HCA's alleged failure to implement reasonable and industry-standard cybersecurity safeguards to adequately protect their Private Information. Moreover, Plaintiffs' claims present the same legal questions, including whether Defendant owed Plaintiffs and the Class a duty of care to implement reasonable cybersecurity measures and whether Defendant breach that duty. Accordingly, the commonality requirement is satisfied.

*__Typicality__*. Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy the typicality requirement here because their claims arise out of the same Data Incident as other putative Class Members and present the same legal theories as would be presented if each Class Member filed their own individual case. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (claims need not be identical but merely "arise from the same course of conduct"). Because Plaintiffs' claims arise out of the same Data Incident, the typicality requirement is met here.

*__Adequacy__*. Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will

vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Both criteria are satisfied here.

First, Plaintiffs have common interests with the putative Class Members in that they were all impacted by the same Data Incident, all received notification letters from Defendant, and their claims all present common questions of law and fact. Moreover, Plaintiffs have diligently prosecuted this action on behalf of the Class and their interests and those of the other Class Members are aligned. Counsel Decl. ¶ 12; *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 486 (W.D. Tenn. July 1, 2011) (adequacy satisfied where "[t]he interests of the absent class members are the same as those of the named plaintiffs because all plaintiffs were allegedly injured in the same manner by the same actions the same defendant. Additionally, there is no suggestion that the named plaintiffs will receive a windfall at the expense of any absent class member."). Thus, Plaintiffs have and will continue to adequately represent the Class subject to the Court's decision to appoint them as Class Representatives.

Second, Plaintiffs have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including data breach class actions. Counsel Decl. ¶ 16. Lead Counsel have adequately represented the Class here.

### 3. The Rule 23(b) Certification Requirements Are Satisfied

Plaintiffs seek certification of the proposed Settlement Class under Rule 23(b)(3). The Court may certify a Rule 23(b)(3) class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *Ham*, 275 F.R.D. at 482. Both of these requirements are easily satisfied here.

***Predominance.*** The predominance inquiry requires the Court "to assess the legal or factual questions that qualify each class member's case as a genuine controversy . . . and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness*, 863 F.3d at 468. Predominance is met if a *single* common factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, common questions of law and fact predominate because Plaintiffs' and Class Members' claims all arise from the same Data Incident, the same notification concerning the Data Incident, and the same alleged failures to implement reasonable cybersecurity practices. Plaintiffs' and Class Members' claims also present common questions of law: whether HCA owed Plaintiffs and Class Members a duty to safeguard their sensitive information; whether HCA breached that duty; whether HCA's conduct or failure to act was the proximate cause of the Data Incident; and whether Plaintiffs and Class Members are entitled to recovery. These common issues, all of which arise from HCA's common course of conduct, predominate here.

***Superiority.*** The superiority inquiry "requires a plaintiff to show "'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"" *In re Fam. Sols. of Ohio, Inc.*, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting Fed. R. Civ. P. 23(b)(3)). "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Here, individual adjudication of these cases would be virtually impossible. Indeed, it would likely mean the individual filing of potentially 11 million cases, which would drain judicial and advocate resources. Thus, a class action is the superior mechanism for Plaintiffs and putative Class Members to seek legal redress here.

**D. The Court Should Approve the Proposed Notice Plan**

Finally, the Court should grant preliminary approval to the proposed Settlement because the proposed Notice Plan provides more than sufficient due process to absent Class Members. Notice to a class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (internal quotation marks and citations omitted). "[A]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (internal quotation marks and citations omitted).

Here, the proposed Notice Plan provides absent Class Members email notices and a website dedicated to providing information to Class Members, affords an opportunity to submit claims, make objections, and to opt-out. Similar notice programs have reached well in excess of ninety percent of class members, and the same outcome is anticipated here. Kroll Decl. ¶ 4; *see also In re Restasis Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (observing that "a notice plan that reaches between 70 and 95 percent of the class is reasonable[,]" and endorsing a notice plan with 80 percent expected reach). Nevertheless, the Settlement provides for a Publication Notice if the notice reach is insufficient. S.A. ¶ 1.25.

As required by Rule 23, the proposed notice documents (S.A. Exhibit B–C) "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The notices here also describe the terms of the proposed Settlement, including requests for Service Awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval Hearing and the procedures for appearing at the hearing; and provides contact information for Lead Counsel and the Settlement Administrator. Kroll Decl. ¶¶ 6–10. The notices inform Class Members of the deadlines for objecting to the Settlement and excluding themselves from the Class and the deadlines themselves are reasonable. The notices use plain language and are, thus, easy to understand. Should Class Members have any questions, the proposed Settlement requires Kroll to establish a toll-free telephone number to answer their questions, which will be equipped with live operators. S.A. ¶ 6.1(h). Thus, the proposed Notice Plan provides ample due process.

## E.    The Court Should Provisionally Appoint Lead Counsel

Plaintiffs request that the Court affirm its interim appointment of Jean Martin of Morgan & Morgan Complex Litigation Group and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Lead Class Counsel; and Jillian Dent of Stueve Siegel Hanson LLP, Sabita Soneji of Tycko & Zavareei LLP, Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeffrey Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert P.A., and James Pizzirusso of Hausfeld LLP as Members of the Executive Committee for the Settlement Class. The Court previously appointed these individuals as Co-Lead Counsel (ECF No. 113) and to the Plaintiffs' Executive Committee (ECF No. 115), respectively. Counsel have vigorously represented the interests of Plaintiffs and Class Members since the inception of this litigation. Counsel Decl. ¶ 21. Considering their work in this litigation, their collective expertise and experience in handling

similar actions, and the resources they committed to representing the Class, Lead Counsel's appointment should be affirmed under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

**Proposed Schedule for Final Fairness Hearing**

Plaintiffs propose the following schedule as set forth in the Settlement Agreement and proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Defendant to send Class List to Kroll | No later than 10 days after entry of an order granting preliminary approval |
| Notice Date | No later than 45 days after entry of an order granting preliminary approval |
| Opt-Out and Objection Deadline | 60 days after the Notice Date |
| Claims Deadline | 90 days after the Notice Date |
| Deadline for Lead Counsel's Application for Fee Award and Costs (and Service Awards) | No later than 20 days prior to the Objection Deadline |
| Deadline for Motion in Support of Final Approval of Settlement | 14 days before the Final Approval Hearing |
| Final Approval Hearing | 135 days after entry of an order granting preliminary approval |

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) conditionally certifying the proposed Class for the purpose of Settlement; (2) conditionally appointing Plaintiffs as Class Representatives; (3) affirming its appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC and Jean Martin of Morgan & Morgan Complex Litigation Group as Lead Class Counsel, as well as Jillian Dent of Stueve Siegel Hanson LLP, Sabita Soneji of Tycko & Zavareei LLP, Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeffrey Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert P.A., and James Pizzirusso of Hausfeld LLP as Members of Plaintiffs' Executive Committee; (4) approving the form and substance of the notice program; (5) preliminarily approving the Settlement as within range of possible final approval; (6) appointing the settlement administrator and ordering it to

conduct the notice program; and (7) setting a date for a fairness hearing for final approval of the Settlement.

Dated: May 5, 2025                                    Respectfully submitted by,

                                                      */s/ J. Gerard Stranch, IV*
                                                      J. Gerard Stranch, IV (BPR 23045)
                                                      **STRANCH, JENNINGS & GARVEY, PLLC**
                                                      The Freedom Center
                                                      223 Rosa L. Parks Avenue, Suite 200
                                                      Nashville, TN 37203
                                                      Tel: (615) 254-8801
                                                      gstranch@stranchlaw.com

                                                      Jean S. Martin
                                                      **MORGAN & MORGAN COMPLEX**
                                                      **LITIGATION GROUP**
                                                      201 North Franklin Street, 7th Floor
                                                      Tampa, FL 33602
                                                      Tel: (813) 559-4908
                                                      jeanmartin@forthepeople.com

                                                      ***Co-Lead Counsel for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed on May 5, 2025, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system. All counsel of record will also be notified via e-mail.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
