UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: HCA HEALTHCARE, INC. DATA SECURITY LITIGATION | Case No. 3:23-cv-00684 <br><br> Hon. Jack Zouhary |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

Plaintiffs, Gregory Crossman, Arthur Dekenipp, Mary Elena Del Vecchio, Carina Gutierrez, Kelsey Hinds, J.B. (a minor, through his guardian/mother, J.N.), Deborah Jordan, Gregory Marcisz, Paula Menard, Gary Silvers, Linda Simon, Michael Tighe, Colleen Walters, Jared Terrell Watkins, and Justin Taylor Womack ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), respectfully request that the Court grant Plaintiffs' request for attorneys' fees and expenses and their Service Awards. Defendant HCA Healthcare ("Defendant" or "HCA") has reviewed this motion and does not oppose the relief requested herein.

## I. INTRODUCTION AND FACTUAL BACKGROUND

This matter arises out of a data incident in which cybercriminals gained unauthorized access to Defendant's systems and exfiltrated Plaintiffs' and Class Members' sensitive personal information on or about July 10, 2023 ("Data Incident"). Approximately 11 million HCA patients' data was compromised, including: names, physical addresses, email addresses, telephone numbers, dates of birth, gender, service dates, locations, and future appointment dates (collectively, "Private Information"). Plaintiffs filed 27 class action lawsuits on behalf of individuals whose Private Information was compromised. These suits were consolidated and Plaintiffs filed a Consolidated Class Action Complaint on February 2, 2024. ECF No. 120. Defendant filed a Motion to Dismiss

1

on April 4, 2024, which the Court granted in part and denied in part. *See* ECF Nos. 127, 148.

Following the Court's order on Defendant's motion to dismiss, the Parties engaged in arm's-length settlement negotiations, including a full-day, formal mediation before Robert A. Meyer of JAMS on February 19, 2025. Declaration of J. Gerard Stranch, IV ("Stranch Decl.") ¶¶ 6–7. In preparation for that mediation, the Parties exchanged confidential pre-mediation discovery and mediation statements. *Id.* ¶ 8. With the assistance of Mr. Meyer, the Parties reached an agreement and subsequently drafted a Settlement Agreement that memorialized the agreed-upon terms. *Id.* ¶ 7. The Court granted preliminary approval of the proposed Settlement on May 14, 2025, and provisionally designated J. Gerard Stranch and Jean Martin as Settlement Class Counsel. *See* ECF No. 180. Notice was then sent to Settlement Class Members. Stranch Decl. ¶ 9.

Pursuant to the Settlement Agreement and this Court's authority, Settlement Class Counsel respectfully submit this Motion for Award of Attorneys' Fees, Expenses, and Service Awards ("Fee Motion") and ask that the Court award $3,100,000 for attorneys' fees, costs, and expenses. The fee request, which is paid separately and does not diminish Class relief, is supported by a lodestar cross check, as Class Counsel has accumulated a combined lodestar of $1,822,371.50 to date. Stranch Decl. ¶ 19. Combined with Class Counsel's unreimbursed expenses of $67,013.60, the fee request amounts to a lodestar multiplier of 1.64, with additional work yet to be performed to bring the Settlement through final approval and distribution of Class benefits, thus lowering the final multiplier. Stranch Decl. ¶ 20. The Agreement provides for the Fee Award and any approved expenses to be paid outside of any other benefits to the Class. Settlement Agreement ("S.A.") ¶ 8. As detailed more fully herein, the factual and legal complexity of these claims required the time and resources that Class Counsel invested. The work performed advancing the claims of the

Settlement Class members – on a fully contingent basis – carried significant risk, and Class Counsel forwent other opportunities and dedicated themselves to this case.

In addition, Class Counsel request that the Court approve Service Awards for the Class Representatives in the amount of $5,000 each. This request is justified by the work performed by Plaintiffs in connection with bringing and litigating this litigation on behalf of all others similarly situated. Since litigation commenced, Class Representatives have been dedicated and active participants. They investigated the matter, reviewed and approved pleadings, kept in close contact with counsel, provided facts and documents, and reviewed and communicated with counsel regarding the Settlement. Stranch Decl. ¶ 10. Class Representatives put their name and reputation on the line for the class and the secured recovery would not have been possible without their efforts.

## II. SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the Class provides for (1) monetary relief of up to $5,000 for each Class Member; (2) credit monitoring with insurance benefits; and (3) equitable relief in the form of valuable changes to HCA's data security and business practices to prevent future data breaches and protect customers' Private Information. Settlement Agreement ("S.A.") §§ 3.1, 2.1.

### A. The Settlement Class

The Settlement provides for a Settlement Class of: "all current HCA patients residing in the United States whose personal information was compromised in the Data Incident." S.A. § 1.33. The Settlement Class specifically excludes "(i) HCA's officers, directors, legal representatives, successors, subsidiaries, and assigns; and (ii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." *Id*.

### B. The Settlement Benefits

The Settlement provides for both monetary and equitable relief. Each Class Member may make a claim for either: (a) a documented loss payment for up to $5,000, which requires the Class Member to attest to and provide documentation for documented losses related to the Data Incident; or (b) credit monitoring with insurance coverage for one year, including fraud consultation and identity theft restoration services. S.A. § 3.1. Additionally, as part of the Settlement, HCA has agreed to adopt or maintain significant security commitments with regard to its data systems for a period of at least two years from the Effective Date. *Id.* § 2.1. The cost of those security commitments are the sole responsibility of HCA and are separate and apart from the monetary benefits described above. Stranch Decl. ¶ 15.

### C. The Value of the Settlement

The Settlement makes available significant benefits to the Settlement Class. HCA has agreed to pay all valid claims of Settlement Class members arising from the Data Breach without any monetary cap. S.A. § 3.1. In other words, there is no set maximum that HCA has agreed to pay. They will pay as much as needed to satisfy all Valid Claims. To illustrate the value to the Class, assume if only one-half percent of the Settlement Class makes a Claim for the documented loss cap of $5,000, the value of the documented loss benefit alone would be $275,000,000. *Id.* ¶ 14. In the same vein, the minimum retail cost of the credit monitoring that Class Members are receiving at no cost here, would cost $8.95 per month per Class Member if they purchased it on their own. That equates to $107.40 for the full year of coverage provided in the Settlement. Stranch Decl. ¶ 13. Though many Class Members may not make claims, the value made available to the approximately 11,000,000 is astronomical. Realistically, however, even if only three percent (3%) of the Settlement Class enrolls in the credit monitoring and insurance services, the value of that

4

benefit alone would be $35,442,000. *Id.* Lastly, all Class Members benefit from the business practice changes Defendant has implemented in the form of cybersecurity enhancements—which are believed to be valued in the millions of dollars. *Id.* ¶ 15.

### III. ARGUMENT

#### A. Attorneys' Fees

The Court should approve attorneys' fees of $3,100,000 for Class Counsel, to be paid by Defendant, separate and in addition to the funds paid for Class Members' direct benefits. Like the Settlement, the amount of this request was discussed with the mediator who presided over the settlement negotiations, and those fee discussions were not commenced until after all the material terms of the Settlement had been agreed to. Stranch Decl. ¶ 16. Maximizing the benefit to the Class was Class Counsel's paramount consideration. Class Counsel's efforts to date of investigation and litigation have been without compensation of any kind, and receipt of any fee award or reimbursement of costs has been wholly contingent upon the result achieved. *Id.* ¶ 17.

Federal Rule of Civil Procedure 23(h) expressly authorizes courts in class action settlements to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). And as the Sixth Circuit has observed, "[w]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). A district court has discretion to use either the percentage of the benefits made available or the lodestar method to calculate attorneys' fees. *Id.*; *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282–83 (6th Cir. 2016) (noting the value of the work by class counsel to provide a fund from which Class Members could claim their benefits regardless of whether class members exercise their

5

rights). Beyond considering the percentage of the benefits made available, courts may also perform a lodestar cross-check. *Id.* at 282–83. Whether based solely on the low percentage of the benefits made available, or through a lodestar cross-check, the fee request here is entirely reasonable. Moreover, traditional factors that courts often consider further confirm the reasonableness of Plaintiffs' request.

### 1. Percentage of the Benefits Made Available

Class Counsel's fee and expense request is at most 8.75% of the value of the benefits made available to Class, without considering all the benefits made available. Stranch Decl. ¶ 13. This valuation is based only on credit monitoring services, though the Settlement provides Class Members with the ability to request reimbursement for documented out-of-pocket expenses or losses instead, should they choose that option. Moreover, the valuation does not include the millions of dollars of benefits to all Class Members in the form of Defendant's significant cybersecurity enhancements, which provide further protection against cyberattacks in the future to help ensure another similar breach of sensitive information does not occur again.

As the Sixth Circuit explained in *Gascho*, the Supreme Court previously held that class counsel may share in the benefits made available for the class to claim "*whether or not they exercise [that right]*". 822 F.3d at 282; *accord Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."). Moreover, the court recognized that consumer class action "have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public

6

sector resources." *Id.* at 287. Indeed, when part of a settlement is claims made, "[i]t would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them." *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at *6 (W.D. Tenn. Nov. 22, 2013).

"In calculating a percentage fee award in a class action involving a settlement fund, the Supreme Court has recognized 'that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole,' even if part of the fund reverts to the defendant." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. 2019) (quoting *Boeing*, 444 U.S. at 478); *see also Boeing*, 444 U.S. at 480 (holding that the class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"). The common benefit doctrine is applied the same way to claims-made or partial claims-made settlements and is not limited by the number of individuals that ultimately make claims. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("[P]roperly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (internal citations omitted).

Moreover, following the Sixth Circuit's guidance in *Gascho*, courts typically calculate fees based on the benefit made available. *Thompson v. Seagle Pizza, Inc.*, 2022 WL 1431084, at *11 (W.D. Ky. May 5, 2022) (noting that courts should consider the total benefit made available to the class and citing *Gascho* but noting that the court should not consider an illusory amount not actually available); *In re Automotive Parts Antitrust Litig.*, 2017 WL 3525415, at *4 (E.D. Mich.

7

July 10, 2017) (declining to wait until the conclusion of the claims process to award fees because fees "need not be tied to amounts class members are actually paid" and noting that the fee award in *Gascho* was greater than the benefits claimed).

Thus, based on the percentage of the benefits made available, Class Counsel's fee request—which amounts at most to 8.75% of the value of the benefits made available—is highly reasonable. *See Weiner v. Tivity Health, Inc.*, 2021 WL 12100563, at *1 (M.D. Tenn. Oct. 7, 2021) (noting that a fee request of 25% was "certainly within range" of typical class counsel fee requests in the Sixth Circuit).

### 2. A Lodestar Cross-Check Confirms the Reasonableness of Plaintiffs' Fees

Courts sometimes rely on a lodestar cross-check to determine whether Class Counsel's fee request is reasonable. *Jones v. Varsity Brands, LLC*, 2024 WL 5010412, at *9 (W.D. Tenn. Dec. 6, 2024). "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used." *Id.* (quoting *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 n.3 (E.D. Tenn., May 17, 2013)). Moreover, courts typically award a multiplier on lodestars in contingency fee cases, such as this one, of between 1.3 and 4. *Id.* (collecting cases); *Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at *7 (W.D. Tenn. Oct. 4, 2023) (same); *Hutchinson v. Fast Pace Med. Clinic PLLC*, 2024 WL 4634055, at *4 (M.D. Tenn. Oct. 30, 2024) (collecting cases and noting that a multiplier of 2.06 was "within the range approved in other similar settlements in the Sixth Circuit"); *see also In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding a multiplier of 6 given counsel's skill and the complexity of litigation). "Typically, courts use multipliers of 2 to 6 times the lodestar." *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013).

Here, Plaintiffs' total lodestar is $1,822,371.50 across 2,020.5 hours for all Plaintiffs' firms who reported their efforts, through August 10, 2025. All counsel for Plaintiffs in this matter were required to maintain contemporaneous, detailed time records. In anticipation of filing this motion, Class Counsel reviewed the time submissions from each firm. Stranch Decl. ¶ 21. The fee request represents a lodestar multiplier of only 1.64. Moreover, Class Counsel's rates are reasonable and standard in the data breach plaintiffs' bar. Indeed, Mr. Stranch's rate—which is the highest among Plaintiffs' counsel—is the rate he charges to hourly paying clients. Stranch Decl. ¶ 23; *see also In re Family Dollar Stores, Inc. Pest Infestation Litig.*, 2024 WL 2806477, at *2 (W.D. Tenn. May 31, 2024) (approving Mr. Stranch's prior rate of $1,430). Thus, a lodestar cross-check reveals a highly reasonable lodestar of only 1.64, so the Court should grant Plaintiffs' request.

### 3. Additional Factors Confirm the Reasonableness of Plaintiffs' Fees

In addition to the percentage method with a lodestar cross-check, courts sometimes consider additional factors in determining the reasonableness of a fee award in class actions:

> (1) the value of the benefit rendered to the plaintiff class []; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

First, the value of the benefit to the Class Members is significant—Class Members may recover up to $5,000 each for documented losses, and Class Members without documented losses may secure valuable credit monitoring with insurance coverage. Moreover, there is no cap to the number of Class Members who can make claims, which is particularly important given the enormous size of the class—11 million individuals whose data has been affected. Finally, the improvement in security practices that HCA has committed to under the terms of the Settlement

9

will benefit Class Members who remain patients (as well as future patients) of Defendant by reducing the risk of future exposure of their information. As noted above, the minimum value of the benefits made available to the Class is $35,442,000. That is a significant value in light of the $3,100,000 fee request, which will be paid separately by Defendant and merely adds to the value of the Settlement to the Class.

Second, the value of Counsel's services on an hourly basis bleeds into the analysis of the complexity of the litigation. This is because the significantly complex and technical nature of data breach litigation requires additional time and effort by Class Counsel. *Beasley v. TTEC Servs. Corp.*, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024) (noting that "courts have recognized that data breach class action cases are 'particularly risky, expensive, and complex'") (quoting *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (collecting cases); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (collecting cases)). This included extensive investigation into the background of the case, Defendant's practices and policies, and significant time and effort spent consulting with experts, including experts to investigate and search the dark web. Stranch Decl. ¶ 24. Class Counsel also researched the pertinent caselaw, reviewed notices concerning the Data Incident, and ultimately drafted complex and detailed complaints. Class Counsel briefed a response to Defendant's Motion to Dismiss and ultimately survived the motion. *Id.* Moreover, Counsel's efforts included preparing for mediation, participating in pre-mediation negotiations with Defendant's counsel, reviewing informal discovery before mediation, exchanging mediation statements, conferences with the mediator, and attending mediation. *Id.* ¶ 25.

In addition to these tasks already performed, additional future work will be required that will be uncompensated. Class Counsel must still: (1) attend the final approval hearing, including

10

the research and drafting of any replies that may be required; (2) continue to respond to inquiries from Class Members regarding the Settlement and claims process; (3) oversee the Settlement through final approval of distribution of benefits; (4) oversee the settlement administration process, including addressing any claim review issues; and (5) handle any appeals. *Id.* ¶ 26. When all this effort is considered, the total number of hours expended is reasonable.

Third, Counsel took this case on a contingent basis. *Id.* ¶ 17. Given the risks associated with contingency fee arrangement for class counsel, courts often award significant lodestar multipliers. "[E]nhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Indeed, in *Arp v. Hohla & Wyss Enters., LLC*, the Southern District of Ohio approved a 5.29 multiplier. 2020 WL 6498956, *7 (S.D. Ohio Nov. 5, 2020) (citing *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (collecting cases and noting multipliers ranging from 4.3 to 8.5 were found reasonable). Because Counsel incurred significant risks in litigating a case that required so much effort and up front costs, the fee award here is even more reasonable.

Fourth, society has a stake in rewarding attorneys who produce benefits in data breach cases because such suits serve not only to compensate victims but also to deter allegedly lax data security practices by other entities and to encourage entities to spend adequately on data security to prevent harm. Indeed, without data breach litigation or a significant increase in government enforcement actions, companies would have far less financial incentive to live up to their duties to reasonably protect highly sensitive and confidential consumer and patient data. Lastly, both sides are represented by highly competent counsel. Stranch Decl. ¶ 27. Class Counsel combined have litigated hundreds of data breach and privacy class actions all over the country and thus have a

11

Case 3:23-cv-00684   Document 185   Filed 08/11/25   Page 11 of 15 PageID #: 2184

wealth of experience in these cases that was brought to bear in these successful negotiations.

Thus, given these factors, Plaintiffs' fee request—which represents a multiplier of only 1.64—is reasonable, especially considering that the fees will be paid separately by Defendant such that they do not diminish any benefits made available to the Class and that there is no cap on the total benefits which the Class may claim.

### B. Class Representatives' Request for Service Awards is Reasonable

Lastly, the Court should approve Service Awards of $5,000 (otherwise known as an "incentive award") for the Class Representatives. Defendant does not oppose the requested amount and has agreed to separately pay the awards in addition to Class Member payments. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ross v. Jack Rabbit Servs., LLC*, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (internal quotations omitted). Such awards "encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *In re Anthem Data Breach Litig.*, 2018 WL 3960068, at *30 (N.D. Cal. Aug. 17, 2018).

Here, the requested Service Award of $5,000 is in line with typical such awards. Courts in the Sixth Circuit commonly award between $5,000 and $10,000 per class representative. *See, e.g.*, *Salinas v. U.S. Xpress Enters., Inc.*, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000). That is in line with other circuits and with what empirical studies have observed. *See, e.g.*, *In re Anthem*, 2018 WL 3960068, at *31 (noting the "benchmark" presumptively reasonable service award in the Ninth Circuit is $5,000); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) ("[C]ourts in [the Eighth] [C]ircuit regularly grant service awards of $10,000 or greater.").

*Scott v. Dart*, 99 F.4th 1076, 1087 (7th Cir. 2024) ("The most recent empirical study on incentive awards reviewed approximately 1,200 class actions from 2006 to 2011 and found that the median incentive award per named plaintiff was $5,250 (or $7,125 in 2023 dollars).") (citation omitted). And courts in the Sixth Circuit in some cases have approved much higher amounts. *See, e.g.*, *Jones v. Varsity Brands, LLC*, 2024 WL 5010412, at *11 (W.D. Tenn. Dec. 6, 2024) (approving awards of $50,000 each to two plaintiffs and $25,000 to a third plaintiff); *Hosp. Auth. of Metro. Gov't of Nashville*, 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020) (approving service awards of $200,000 to each plaintiff).

Regardless of the amount, however, courts determining whether to approve Service Awards in the Sixth Circuit have considered three factors:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Ross*, 2016 WL 7320890, at *5 (quotation omitted).

Here again, the requested Service Award of $5,000 is supported by these factors. First, without the Class Representatives' willingness to reach out to counsel, provide relevant information, review the complaint, respond to discovery and produce documents, and approve the settlement, there would be no class action recovery at all. Second, the recovery obtained is substantial, resulting in documented loss payments or credit monitoring services for all the millions of absent Class members who did *not* step forward to pursue the litigation, in addition to the important and expensive cybersecurity enhancements Defendant has undertaken. Third, by putting their names on a class action in federal court, the Class Representatives necessarily exposed themselves to the reputational risk that thousands of people may know their names, that their

personal data was breached, and that they sought redress from HCA—as well as the potential stigma of being flagged as "litigious" during background or employment searches.

Now that the litigation has succeeded in providing a substantial multi-million-dollar benefit to Class Members, the Court should recognize the Class Representatives' role in that achievement by awarding them $5,000 Service Awards. S.A. ¶ 7.1.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request the Court grant their motion for attorneys' fees, expenses, and Service Awards.

Dated: August 11, 2025.

Respectfully Submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 023045)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Jean S. Martin
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 559-4908
jeanmartin@forthepeople.com

***Co-Lead Counsel for Plaintiffs and the Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Service Awards was electronically filed on this 11th day of August, 2025 via the Court's ECM/ECF filing system, which will electronically serve all counsel of record.

*/s/ J. Gerard Stranch, IV*
J, Gerard Stranch, IV (BPR 23045)